Kevin J. Holl, State Bar No. 124830
GORDON-CREED, KELLEY, HOLL &
SUGERMAN, LLP
222 Kearny Street, Suite 650
San Francisco, CA 94108
Telephone: (415) 421-3100
Facsimile: (415) 421-3150

Attorneys for Plaintiff
Merrill Lynch, Pierce, Fenner & Smith
Incorporated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, a Delaware corporation,

Plaintiff,

vs.

WILLIAM FREDRICKSON,

Defendant.

CASE NO. C 07 3336

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MERRILL LYNCH'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND/OR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; AND EXPEDITED DISCOVERY

Date:
Time:
Dept.:

I.    PRELIMINARY STATEMENT OF FACTS.

Merrill Lynch, Pierce, Fenner & Smith Incorporated's ("Merrill Lynch") claim for injunctive relief arises from Defendant William E. Fredrickson's ("Fredrickson") breach of contract for failing to return Merrill Lynch client information stored on his computer and other personal digital assistants, his unlawful use of records taken from Merrill Lynch, and for his solicitation of Merrill Lynch's customers. Merrill Lynch's claim also arises from Defendant's attempt to divert these Merrill Lynch accounts, assets, and commission revenues to his new employer, Royal Alliance & Associates, Inc., ("Royal Alliance").

*While still in the employ of Merrill Lynch and/or immediately thereafter*, Defendant, who resigned from Merrill Lynch without advance notice on Friday, June 1, 2007, prepared to engage in, engaged in, and continues to engage in, the following acts:

(1) retaining, and/or copying confidential Merrill Lynch customer information, including without limitation, a client contact system installed on his personal computer, as well as the names and addresses on Defendant's PDA of the numerous Merrill Lynch accounts he serviced;

(2) refusing to return the computer and PDA;

(3) using the confidential customer information contained in Merrill Lynch's records to solicit Merrill Lynch's customers to do business with them at his new employer by, *inter alia*, sending a mass solicitation email to over 423 of Merrill Lynch clients;

(4) disclosing and producing this confidential information to third parties as well as his new employer.

The need for immediate relief is critical. Unless a Temporary Restraining Order is issued immediately, Merrill Lynch will continue to suffer immediate and irreparable harm. Merrill Lynch's confidential information cannot be "un-misappropriated." Merrill Lynch's customers cannot be "unsolicited." The damage to Merrill Lynch cannot be undone.

California courts have consistently granted Merrill Lynch and other brokerage firms injunctive relief against departing financial advisors in cases virtually identical to the current case. See, e.g., Merrill Lynch v. Folsom, No. CV 1358 BTM (AJB) (S.D. Cal. 2005); Merrill Lynch v. Reidenouer, No. C05-4806 CW (N.D. Cal. 2004); Merrill Lynch v. Brewer, No. EDCV 03-1204 RT (C.D. Cal. 2003); Merrill Lynch v. Chung, 2001 WL 283083, (C.D. Cal.; Marshall, J.; 2001); Merrill Lynch v. Garcia, 127 F.Supp. 2d 1305 (C.D. Cal.; Moreno, J.; 2000); Merrill Lynch v. Clark, No. EDCV 01-581 RT (SGLx) (C.D. Cal., Timlin, J.); Merrill Lynch v. Nicholson, No. 759911 (Orange County Super. Ct; Polis, J.; 1996) and subsequent NASD Arbitration Award; (attached hereto as Exhibits "A" - "G").

In light of the applicable law, these results are not surprising. In <u>Merrill Lynch v. Bradley</u>, the United States Court of Appeals for the Fourth Circuit specifically emphasized that <u>immediate</u> injunctive relief is critical in these cases to avoid irreparable harm to the employer and to maintain the <u>status quo</u>:

> "An injunction even a few days after solicitation has begun is unsatisfactory because the damage is done. <u>The customers cannot be 'unsolicited.'</u>"

752 F.2d 1048, 1054 (4th Cir. 1985) (emphasis added).

Defendant's solicitation of Merrill Lynch's customers is a violation of California law and is subject to injunctive relief. <u>Courtesy Temporary Serv., Inc. v. Camacho</u>, 222 Cal. App. 3d 1278, 1287 (1990); <u>American Credit Indem. Co. v. Sacks</u>, 213 Cal. App. 3d 622 (1984).

Moreover, at the time Defendant Fredrickson commenced his employment with Merrill Lynch, he signed Merrill Lynch's <u>Financial Consultant Employment Agreement and Restrictive Covenants</u> (the "Agreement") (<u>See</u> Exhibit "A" to Merrill Lynch's Complaint). Fredrickson's Agreement provides, in relevant part, as follows:

> 1. **<u>All records</u>, whether original, duplicated, computerized, memorized, handwritten, or in any other form, <u>and all information</u> contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch.** This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. **I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.**
>
> This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that

these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

**2. If, at any time, I resign from Merrill Lynch**, provoke my termination, or am terminated for cause, **I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means,** either directly or indirectly, **any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity**. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

(a) to transfer from Merrill Lynch to me or to my new employer, or

(b) to open a new account with me or with my new employer, or

(c) to otherwise discontinue its patronage and business relationship with Merrill Lynch.

See Exhibit "A" to Merrill Lynch's Complaint at ¶¶ 1-2 (emphasis added in part).

Additionally, in his <u>Financial Consultant Employment Agreement and Restrictive Covenants</u>, Fredrickson expressly consented to the issuance of temporary injunctive relief by this Court in the event he breached the terms of his agreement:

**4. In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief.** I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, **I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION** ordering:

(a) **that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records**; and

(b) **that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name

> became known to me while employed by Merrill Lynch, in any office and in any capacity....
>
> 5. For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction. Further, in the event I voluntarily resign my employment, I will take no action (either by court proceedings or otherwise), to inhibit in any way Merrill Lynch's rights under paragraph 4 herein.

See Exhibit "A" to Merrill Lynch's Complaint at ¶ 4-5 (emphasis in original).

In consideration of the foregoing obligations assumed by Defendant, Merrill Lynch agreed to, and in fact did, compensate Defendant, provide him with introductory and continuing on-the-job securities training, register Defendant with the New York Stock Exchange, National Association of Securities Dealers, American Stock Exchange, and California Securities Commission, and provide Defendant with all Merrill Lynch benefits and support at all times.

## II.    MERRILL LYNCH IS ENTITLED TO A TEMPORARY RESTRAINING ORDER.

The United States Court of Appeals for the Ninth Circuit will grant a party preliminary injunctive relief when it shows either:

>   (1)   a likelihood of success on the merits and the possibility of irreparable injury; or
>
>   (2)   the existence of serious questions going to the merits and the balance of hardships tipping in [the movant's] favor.

MAI Systems v. Peak Computer, Inc., 991 F.2d 511, 516 (9th Cir. 1993). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id.

The need for immediate injunctive relief is particularly critical where, as here, a former employee has confiscated records and digital information and is unlawfully soliciting his former employer's customers. As was demonstrated in American Credit Indem. Co. v. Sacks, a case "on all fours" with this case, a plaintiff-employer is entitled to a TRO, an OSC re preliminary injunction and expedited discovery in the face of aggressive solicitation of its clients by an avaricious former employee. American Credit Indem. Co. v. Sacks, 213 Cal. App. 3d 622, 627

MEMORANDUM OF POINTS AND AUTHORITIES RE MERRILL LYNCH'S TRO

(1989); see also MAI Systems, 991 F.2d at 520-22 (holding "[w]e agree that the customer database qualifies as a trade secret" and affirming a permanent injunction against soliciting or accepting business from MAI's customers).

The evidence adduced in this case strongly indicates that Defendant, at the time he resigned, began soliciting Merrill Lynch's customers, most likely with the use of confidential trade secret information that he had taken relating to Merrill Lynch's customers. Such actions are a clear violation of Defendant's obligations to Merrill Lynch.

As the affidavit and documents submitted herewith demonstrate, Merrill Lynch seeks only to preserve the status quo by obtaining a Temporary Restraining Order from this Court that would compel Defendant to return the records and information he misappropriated from Merrill Lynch and to refrain from the further solicitation of Merrill Lynch's customers. Once solicited by Defendant, these customers cannot be unsolicited. Thus, any ultimate hearing on the parties' dispute would be rendered a hollow formality and wholly ineffectual.[1]

### III.    MERRILL LYNCH IS ALSO ENTITLED TO AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION.

Issuance of an injunction in the instant proceeding is proper, as in the above-cited California cases and decisions of federal appellate courts in Merrill Lynch v. Bradley, 756 F.2d 1048 (4th Cir. 1985); Ruscitto v. Merrill Lynch, 777 F. Supp. 1349 (N.D. Tex), aff'd, 948 F.2d 1286 (5th Cir. 1991); Merrill Lynch v. Dutton, 844 F.2d 726 (10th Cir. 1988); Merrill Lynch v.

---

[1] The merits of this dispute are subject to arbitration pursuant to the National Association of Securities Dealers ("NASD") Code of Arbitration Procedure. A court, however, can order injunctive relief pending the outcome of arbitration. This rule has been recognized by the vast majority of federal courts, **including the Ninth Circuit.** See PMS Distrib. Co. v. Huber, 863 F.2d 639 **(9th Cir. 1988).** See also Teradyne Inc. v. Mostek Corp., 797 F.2d 43 (1st Cir. 1986); Connecticut Resources Recov. Auth. v. Occidental Pet. Corp., 705 F.2d 31, 35 (2nd Cir. 1983); Roso-Lino Bev. Distrib. v. Coca-Cola Bottling Co., 749 F.2d 124 (2nd Cir. 1984); Ortho Pharm. Corp. v. Amgen, Inc., 887 F.2d 460 (3rd Cir. 1989); Merrill Lynch v. Bradley, 756 F.2d 1048 (4th Cir. 1985); RGI, Inc. v. Tucker & Assoc., 858 F.2d 227 (5th Cir., 1988); Performance Unlimited, Inc. v. Questar Pub, Inc., 1995 WL 248468 (6th Cir. 1995); Merrill Lynch v. Salvano, 999 F.2d 211, 214 (7th Cir. 1993); Sauer-Getribe KG v. White Hydraulics, Inc., 715 F.2d 348 (7th Cir. 1983), cert. denied, 464 U.S. 1070 (1984); Peabody Coalsales v. Tampa Elec., 36 F.3d 46, 48 (8th Cir. 1994); Merrill Lynch v. Dutton, 844 F.2d 726 (10th Cir. 1988). In addition, in March 2002, the NASD codified Merrill Lynch's right to seek temporary injunctive relief from a court pending arbitration. Specifically, NASD Code of Arbitration Procedure Rule 13804 provides: "[P]arties may seek a temporary restraining order...from a court of competent jurisdiction." See III(C), infra.

Hagerty, 808 F. Supp. 1550 (S.D. Fla. 1992), aff'd, 2 F.3d 405 (11th Cir. 1993), and Merrill Lynch v. Salvano, 999 F.2d 211 (7th Cir. 1993).

### A. MERRILL LYNCH HAS A LIKELIHOOD OF SUCCESS ON THE MERITS

Merrill Lynch's probability of success is based both on Defendant's contractual obligations and on well-established California law. The conduct in the present case violates contractual duties owed by Defendant to Merrill Lynch. At the outset of his employment and thereafter, Fredrickson agreed to protect all client information. He breached this agreement, however, by disclosing the private email addresses of Merrill Lynch's clients on a mass email sent to hundreds of customers, and by wrongfully disclosing the fact of the clients' financial relationship with Merrill Lynch. Fredrickson's abuse of Merrill Lynch's clients privacy rights and his failure to return equipment and records containing the clients' information must be enjoined.

There should be no dispute that Defendant misappropriated sensitive client information, wrongfully disclosed that information, and now refuses to return the information as mandated by his contract with Merrill Lynch. (See the Affidavit of Abigail Ivins filed with this motion; Merrill Lynch v. Chung and Barnes, 2001 WL 283083 (C.D. Cal., February 2, 2001).

Merrill Lynch does not seek to bar Defendant from earning his living as a "stockbroker," even though he will be with a competitor firm serving the same community. Rather, Merrill Lynch seeks only to enjoin Defendant from stealing Merrill Lynch customers. See Boughton v. Socony Mobil Oil Co., 231 Cal. App. 2d 188, 192 (1964) (while Section 16600 bans restraints on pursuit of an entire business, "where one is barred from pursuing only a small or limited part of the business, trade or profession, the contract has been upheld as valid"); Ruscitto v. Merrill Lynch, 777 F. Supp. at 1354 ("Here, Ruscitto will be permitted to pursue his current profession and to compete with Merrill Lynch in the very community in which he long resided.").

### B. MERRILL LYNCH HAS NO ADEQUATE REMEDY AT LAW AND WILL CONTINUE TO SUFFER IRREPARABLE INJURY IF THIS COURT DOES NOT ISSUE AN INJUNCTION

As readily recognized in American Credit, the solicitation of a company's clients by its former employees may not be remedied by money damages alone. See 213 Cal. App. 3d at 637-38; see also Courtesy, 222 Cal. App. 3d at 1278; State Farm Mut. Auto Ins. Co. v. Dempster, 174 Cal. App. 2d 418 (1960).

In American Credit, the defendant solicited her former employer's clients both verbally and in writing. The court expressly found that the plaintiff would "sustain continuing interim harm in the absence of an injunction." 213 Cal. App. 3d at 637. If Defendant is allowed to continue his solicitation of Merrill Lynch's customers with information taken form Merrill Lynch. Defendant will reap the full benefit of his wrongdoing before the Court has a chance to consider the matter. The misappropriation of Merrill Lynch's customer information, loss of customers, and the loss of goodwill would irreparably injure Merrill Lynch and would not be easily calculable in damages. Therefore, this Court should grant the temporary injunction as Merrill Lynch has requested.

Absent immediate injunctive relief, Merrill Lynch will suffer irreparable harm on at least three separate and distinct levels. First, unless immediate injunctive relief is granted, it will be impossible to measure Merrill Lynch's damages with any reasonable degree of certainty. In Merrill Lynch v. Stidham, the Court held under virtually identical circumstances that the defendant employee's misappropriation of Merrill Lynch's trade secrets caused irreparable harm to Merrill Lynch and ruled:

> Were defendant permitted by the law to exploit the clientele of their former employers, every investment that reasonably flowed from the exploitation should be included in the damages award. **How such a figure could be arrived at escapes us.**

658 F.2d 1098, 1102 (5th Cir. 1981) (emphasis added); see also Merrill Lynch v. Bradley, 756 F.2d at 1055 (the Fourth Circuit Court of Appeals expressly held that Merrill Lynch "faced irreparable non-compensable harm in the loss of its customers.").

In American Credit, the California Court of Appeal reached the identical result, holding that money damages were inadequate and that preliminary injunctive relief was necessary to protect the employer. It is impossible to determine at this time the number of Merrill Lynch

clients who will be pirated away by Defendant. It is also impossible to determine with any degree of certainty the commissions each of these clients will generate not only this year, but 5, 10, 20, or 30 years into the future. Accordingly, Defendant's misappropriation of Merrill Lynch's trade secret property involves financial loss to Merrill Lynch that is incapable of measurement and requires the issuance of an injunction to protect Merrill Lynch from irreparable harm.

Second, irreparable harm also lies in the fact that Merrill Lynch clients expect their financial information, their market transactions, and their investment assets to be known only to themselves, Merrill Lynch and Merrill Lynch employees. See Merrill Lynch v. Chung and Barnes, 2001 WL 283083 *5 (C.D. Cal. Feb. 2, 2001) (holding that one ground on which Merrill Lynch will suffer irreparable harm is the breach of client confidentiality); see also Merrill Lynch v. Rodger, 75 F.Supp.2d 375, 381 (M.D.Pa. 1999) (the Court found as a valid basis for claiming irreparable injury that Merrill Lynch's "customers will lose trust and confidence in it if they discover that ex-employees have divulged to others private financial information like account value, market transactions and investment assets").

Merrill Lynch faces significant irreparable harm on numerous levels, including the infliction of incalculable damages, a loss of client confidentiality, and a threat to office stability, all of which necessitate the issuance of immediate injunctive relief.

C. **THE BENEFITS OF GRANTING INJUNCTIVE RELIEF OUTWEIGH DENIAL AND SERVE THE PUBLIC INTEREST**

Merrill Lynch seeks to return to the status quo and compel Defendant to return all confidential data he wrongfully diverted from Merrill Lynch. A return to the status quo further requires that Defendant be enjoined from further solicitation of Merrill Lynch's customers.

The benefit of injunctive relief to Merrill Lynch outweighs any detriment to Defendant. An injunction would protect Merrill Lynch's goodwill, business reputation, trade secrets, methods of business operation, and contract rights. Most importantly, however, an injunction would protect Merrill Lynch's confidential client information. By contrast, Defendant has deliberately breached his commitments to Merrill Lynch and misappropriated Merrill Lynch's

trade secret property. Finally, Merrill Lynch seeks only to require Defendant to abide by his obligations and commitments to Merrill Lynch, and the Trade Secret Act. Merrill Lynch's injunction will <u>not</u> prevent Defendant from earning a living at the same trade, even with a competitor. As the above authorities amply demonstrate, temporary and preliminary injunctive relief is fully warranted and necessary in this action.

The public interest is also served by enforcing the terms of the parties' arbitration agreements and procedures. Rule 13804 of the NASD Code of Arbitration Procedure addresses the means by which parties to NASD arbitration agreements may seek temporary injunctive relief in arbitrable disputes. See Exhibit "H," NASD Notice to Members 02-13. Rule 13804 requires that temporary injunctive relief <u>be sought only in a court of competent jurisdiction</u>:

    (a)    Temporary Injunctive Order

        (1)    [P]arties may seek a temporary injunctive order from a court of competent jurisdiction…

See NASD Rule 13804(a)(1) –(2) attached hereto as Exhibit "**H**." Rule 138004 now codifies what courts throughout the country have historically held: that temporary injunctive relief from court is necessary to "freeze the status quo" thereby preserving "the meaningfulness of the arbitration." Under Rule 13804, only when a court enters temporary injunctive relief can an expedited arbitration hearing on the request for permanent injunctive relief be held within 15 days of the date the court issued the injunctive order.

    (b)    Hearing on Request for Permanent Injunctive Relief

        (1)    Scheduling of Hearing.

            If a court issues a temporary injunctive order, an arbitration hearing on the request for permanent injunctive relief shall begin within 15 days of the date the court issues the temporary injunctive order…

See Exhibit "**H**" NASD Code of Arbitration Rule 13804 (b)(1). Therefore, to preserve the status quo and to ensure expedited hearings in arbitration, Merrill Lynch requests that this Court issue

injunctive relief enjoining Defendant's misappropriation of Merrill Lynch clients and their confidential information.

## IV. CONCLUSION

For the reasons stated above, Merrill Lynch respectfully requests that its application for a TRO and OSC Re Preliminary Injunction be granted.

Dated: June 25, 2007

GORDON-CREED, KELLEY, HOLL & SUGERMAN LLP

By: _____
KEVIN J. HOLL

Attorneys for Plaintiff,
Merrill Lynch, Pierce, Fenner & Smith Incorporated

Of Counsel:

Brendan D. Hennessy, Esquire
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road
Paoli, PA 19301
(610) 408-2021
(610) 408-9070 (facsimile)



# Exhibit A



UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOHN FOLSOM, LINDA STIRLING, LAWRENCE ANDREWS and WILLIAM PERRY, individuals,<br><br>Defendants. | Case No. CV 1358 BTM (AJB)<br><br>[PROPOSED] ORDER GRANTING PLAINTIFF MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; AND EXPEDITED DISCOVERY |

AND NOW, this 7th day of July, 2005, upon consideration of the Complaint and Ex Parte Application and Motion of Plaintiff Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), and having determined that:

1. Under Rule 10335 of the National Association of Securities Dealers Code of Arbitration Procedure, Merrill Lynch has the express right to seek temporary and preliminary injunctive relief from a court of competent jurisdiction pending an arbitration hearing before a full panel of duly-appointed arbitrators;

1

Case No. CV 1358 BTM (AJB)

2. Merrill Lynch has established a reasonable likelihood of success on the merits of its claims for injunctive relief;

3. Merrill Lynch will suffer irreparable harm and loss if Defendants are permitted to (a) misuse the property of Merrill Lynch for Defendants' own personal use and benefit, and that of Defendants' new employer, RBC Dain Rauscher ("Dain Rauscher"), and (b) solicit accounts and Merrill Lynch customers;

4. Merrill Lynch has no adequate remedy at law;

5. Greater injury will be inflicted upon Merrill Lynch by the denial of temporary injunctive relief than would be inflicted upon Defendant by the granting of such relief; and

6. An injunction serves the public interest in the protection of confidential and trade secret business and client property and enforcement of reasonable contractual obligations, firm policy and fiduciary duty.

IT IS HEREBY ORDERED AND DECREED THAT:

1. Pending a hearing on the Order to Show Cause Re: Preliminary Injunction, a Temporary Restraining Order hereby issues immediately enjoining and restraining Defendants Folsom, Stirling, Andrews and Perry, directly and indirectly, and whether alone or in concert with others, including any agent, representative, officer, or employee of Defendants' current employer, Dain Rauscher, until hearing and thereafter and until further Order of this Court, from:

a) soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whom Defendants served or whose name became known to Defendants while in the employ of Merrill Lynch for the purpose of advising said clients of their new affiliation or for the purpose of inviting, encouraging or requesting the transfer of any accounts or business patronage from Merrill Lynch (excluding the Defendants' family and relatives and any client serviced by Defendants Folsom and/or Stirling that resides greater than one hundred (100) miles from San Diego, CA);

1        b) using, disclosing, or transmitting for any purpose, including solicitation of said clients, any and all information contained in the records of Merrill Lynch or concerning its clients, including, but not limited to, the names, addresses, and financial information of said clients; and

      c) destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Defendants' possession or control which were obtained from or contain information derived from any Merrill Lynch records, which pertain to Merrill Lynch clients whom Defendants served or whose names became known to them while employed by Merrill Lynch, or which relate to any of the events alleged in the Complaint in this action.

2. Merrill Lynch shall post security in the amount of $ 50,000 no later than July 12, 2005.

3. Defendants, and anyone acting in concert or participation with Defendants, specifically including their legal counsel and any agent, employee, officer or representative of Dain Rauscher, are further ordered to return to Merrill Lynch's San Diego, California office any and all records, documents and/or other types of information pertaining to Merrill Lynch customers ("Customer Information"), whether original, copied, handwritten, computerized (including computer software, disks, computer hard drive and/or any other type of computer or digital information storage device) or memorialized in any other form, within twenty-four (24) hours of notice to Defendants or their legal counsel of the terms of this Order.

4. Any and all Customer Information within the possession, custody or control of any of the Defendants that is contained in any computerized form, including on computer software, disks, computer hard drive, and/or any other type of computer or digital information storage device, returned pursuant to paragraph 3 above shall be permanently deleted by a Merrill Lynch representative. Such Customer Information shall be permanently deleted, if possible, without affecting any other information or software on

3                       Case No. CV 1358 BTM (AJB)

1  the computer. Defendants, and anyone acting in concert with Defendants, are precluded
2  from reconstituting or in any way restoring any Customer Information deleted pursuant to
3  this paragraph and/or returned to Merrill Lynch pursuant to paragraph 3 above.
4      5.  Pending hearing on the Order to Show Cause Re: Preliminary Injunction
5  before this Court, and pursuant to the requirements of sections 3 and 4 of the Federal
6  Arbitration Act, 9 U.S.C. §§ 3-4, the parties are directed to commence and to proceed with
7  arbitration in accordance with Rule 10335(b) of the National Association of Securities
8  Dealers Code of Arbitration Procedure.
9      6.  Defendants are further ordered to show cause, if any, before this Court on
10 July 19, 2005 at 9:30 o'clock A.m., or as soon thereafter as counsel may be heard, why a
11 Preliminary Injunction should not be ordered according to the terms and conditions set
12 forth above.
13     ~~7.  Merrill Lynch is granted leave to take expedited deposition discovery prior~~
14 ~~to the hearing on the Order to Show Cause Re: Preliminary Injunction referred to~~
15 ~~hereinabove.~~
16     7.  This Order shall remain in full force and effect until such time as this Court
17 ~~specifically orders otherwise~~ enters an order on the motion for preliminary injunction.
18 IT IS SO ORDERED.
19 Dated: July 7, 2005
                                                    _____
20                                                  United States District Court Judge
21 Submitted by:
22
23 John Vaughn, State Bar No. 171801
   Todd R. Kinnear, State Bar No. 208831
24 LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
25 San Diego, California 92101-3372
   Telephone No. 619.236.1414
26 Facsimile No.: 619.232.8311
27 Attorneys for Plaintiff MERRILL LYNCH, PIERCE,
   FENNER & SMITH INCORPORATED
28

4                                            Case No. CV 1353 BTM (AJB)



# EXHIBIT B

Nov 17 04 06:19p                                                              p.2

                                                               FILED
                                                               NOV 17 2004
                                                               RICHARD W. WIEKING
                                                               CLERK, U.S. DISTRICT COURT
                                                               NORTHERN DISTRICT OF CALIFORNIA
                                                               OAKLAND

              IN THE UNITED STATES DISTRICT COURT

              FOR THE NORTHERN DISTRICT OF CALIFORNIA

MERRILL LYNCH, PIERCE, FENNER & SMITH        No. C 04-4806 CW
INC.,
                                             ORDER GRANTING
          Plaintiff,                         PLAINTIFF'S
                                             APPLICATION FOR A
     v.                                      TEMPORARY
                                             RESTRAINING ORDER
JOHN C. REIDENOUER AND BRANDON P.            AND ORDER TO SHOW
SIMMONS,                                     CAUSE

          Defendants.
_____/

     Plaintiff Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill
Lynch) moves for a temporary restraining order (TRO) enjoining John
C. Reidenouer and Brandon P. Simmons (Defendants) from further
conversion of Merrill Lynch property and trade secret information,
including Merrill Lynch customer information, and solicitation of
Merrill Lynch clients.  Plaintiff also requests an order directing
the parties to proceed expeditiously with arbitration and granting
Plaintiff leave to begin immediate discovery.  Defendants oppose
this motion.  Having considered the papers filed by the parties,
and good cause appearing, the Court grants the motion for a
temporary restraining order and orders Defendants to show cause why
a preliminary injunction should not issue.

                              BACKGROUND

     Defendant Reidenouer and Defendant Simmons are former

employees of Merrill Lynch. When Reidenouer joined Merrill Lynch in 2002, he signed an agreement confirming that all customer account information, including names, addresses, and phone numbers, was confidential and the sole property of Merrill Lynch. Complaint Ex. A § 2. Reidenouer further promised not to solicit (defined to include initiating any contact or communication) any customer he served while working for Merrill Lynch for a period of up to one year following termination of his employment. Id. at § 2. In the event of breach, Reidenouer agreed to consent to the issuance of a temporary restraining order. Id. at § 4. Both Simmons and Reidenouer agreed to comply with Merrill Lynch policies on communicating with clients, which affirm the confidentiality and security of Merrill Lynch customer information. Complaint Ex. B.

On November 10, 2004, Ridenouer and Simmons departed from Merrill Lynch to join a competitor firm. Merrill Lynch filed a complaint against Defendants on November 12, 2004 for breach of contract, misappropriation of trade secrets, breach of fiduciary duty, and unfair competition. Merrill Lynch alleges that Defendants took with them proprietary and trade secret customer information and that Defendants have called Merrill Lynch clients to encourage them to continue to do business with Defendants. For instance, Jeffrey Schnitz, Merrill Lynch Administrative Manager, asserts that a customer called the Merrill Lynch office on Nov. 10 and stated that Simmons had scheduled a meeting with her "to discuss his new firm and about continuing to do business for her." Schnitz Decl. ¶ 7. Defendants admit that they took client information with them and do not deny that they called former

2