1  clients, Reidenouer Decl. ¶ 7 and Simmons Decl. ¶ 5, but argue that
2  such client information is not a trade secret and that they have
3  not engaged in solicitation.

4                           LEGAL STANDARD

5        A temporary restraining order may be issued only if "immediate
6  and irreparable injury, loss, or damage will result to the
7  applicant" if the order does not issue. Fed. R. Civ. P. 65(b). To
8  obtain a temporary retraining order, the moving party must
9  establish either: (1) a combination of probable success on the
10 merits and the possibility of irreparable harm, or (2) that serious
11 questions regarding the merits exist and the balance of hardships
12 tips sharply in the moving party's favor. See Baby Tam & Co. v.
13 City of Las Vegas, 154 F.3d 1097, 1100 (9th Cir. 1998); Rodeo
14 Collection. Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir.
15 1987).

16       The test for granting a temporary restraining order, like that
17 for a preliminary injunction, is a "continuum in which the required
18 showing of harm varies inversely with the required showing of
19 meritoriousness." Rodeo Collection, 812 F.2d at 1217 (internal
20 citation omitted). The moving party ordinarily must show "a
21 significant threat of irreparable injury," although there is "a
22 sliding scale in which the required degree of irreparable harm
23 increases as the probability of success decreases," United States
24 v. Odessa Union Warehouse Co-op, 833 F.2d 172, 174, 175 (9th Cir.
25 1987), and vice versa.

26                           DISCUSSION

27       Merrill Lynch has demonstrated probable success on the merits

28                                  3

United States District Court
For the Northern District of California

1  of its breach of contract and misappropriation of trade secrets
2  claims.  Merrill Lynch asserts that it put substantial time,
3  effort, and expense into training and supporting its employees, and
4  both Merrill Lynch and Defendants report putting significant effort
5  into development of customer lists.  Such customer lists produced
6  by substantial time, effort and expense may be protected trade
7  secrets.  Courtesy Temporary Service, Inc. v. Camacho, 222 Cal.
8  App. 3d 1278, 1287 (1990); see also MAI Systems Corp. v. Peak
9  Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993) (finding customer
10 database to be trade secret where information has potential
11 economic value and employees were required to sign confidentiality
12 agreements).  Defendants' contract not to use Merrill Lynch
13 customer data for their own benefit, and Reidenouer's non-
14 solicitation contract, do not prevent Defendants from pursuing
15 their profession and competing against Merrill Lynch in the future,
16 and are likely enforceable.  Cf. Application Group, Inc. v. Hunter
17 Group, Inc., 61 Cal. App. 4th 881, 900 (1998) (invalidating non-
18 compete covenant).

19      The Court finds that further possession of Merrill Lynch
20 customer information and solicitation of Merrill Lynch clients may
21 irreparably harm Plaintiff.  Defendants have already used Merrill
22 Lynch customer information to contact former clients.  Though
23 Defendants do have the right to announce their change of
24 affiliation to former customers, see, e.g., Moss, Adams & Co. v.
25 Shilling, 179 Cal. App. 3d 124, 127 (1986), Defendants continue to
26 regard Merrill Lynch customers as "theirs," Reidenouer Decl. ¶ 6,
27 Simmons Decl. ¶ 10, and Simmons has allegedly scheduled a meeting
28

4

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   to talk to a client about "continuing to do business for her."
2   Schnitz Decl. ¶ 7.  Enjoining Defendants from initiating telephone
3   calls is necessary to ensure that Defendants do not solicit Merrill
4   Lynch clients.  Furthermore, an injunction against Simmons'
5   solicitation is warranted because Simmons and Reidenouer are acting
6   in concert.  Money damages alone are not adequate to compensate for
7   use of trade secrets or solicitation of a company's clients by a
8   former employee.  American Credit Indemnity Co. v. Sacks, 213 Cal.
9   App. 3d 622, 637-38 (1989).  Therefore, the threat of irreparable
10  injury warrants immediate injunctive relief.  The fact that Merrill
11  Lynch allegedly encouraged Reidenouer to solicit former accounts
12  when it hired him is not sufficient cause to bar Merrill Lynch from
13  seeking immediate injunctive relief here, though it may explain
14  Merrill Lynch's impetus for obtaining a non-solicitation contract
15  with Reidenouer.  See EEOC v. Recruit U.S.A., Inc., 939 F.2d 746,
16  753 (9th Cir. 1991) (upholding preliminary injunction despite
17  charge of unclean hands).

18                            CONCLUSION

19       Because Merrill Lynch has shown a likelihood of success on the
20  merits and possible irreparable injury, the Court grants the
21  application for a temporary restraining order.  Defendants, and
22  their officers, agents, servants, employees and attorneys and those
23  in active concert or participation with Defendants are hereby
24  restrained and enjoined as follows:

25       Defendants shall not solicit any business from, or initiate
26  any further contact or communication with, any client of Merrill
27  Lynch (excluding members of Defendants' family) whom Defendants
28                                5

1 | served or whose name became known to Defendants while in the employ
2 | of Merrill Lynch, including for the purpose of inviting,
3 | encouraging, or requesting the transfer of any accounts from
4 | Merrill Lynch.  Notwithstanding the above, Defendants may send one
5 | change-of-affiliation announcement in written form to former
6 | clients not already contacted.

7 | Defendants shall not use, disclose, or transmit for any
8 | purpose, including the solicitation of business or account
9 | transfers, the information contained in the records of Merrill
10 | Lynch.  Any contact information used to send change-of-affiliation
11 | announcements must be information that is easily obtainable through
12 | non-Merrill Lynch sources.

13 | Defendants shall return to Merrill Lynch's San Francisco,
14 | California counsel:  1) all computers and computer devices
15 | Defendants used to store Merrill Lynch customer information during
16 | their employment with Merrill Lynch to allow Merrill Lynch to
17 | inspect and delete Merrill Lynch customer information from said
18 | computers, and 2) any and all records or information pertaining to
19 | Merrill Lynch's customers whether in original, copied,
20 | computerized, handwritten or any other form, within twenty-four
21 | hours of notice to Defendants or their counsel of the terms of this
22 | Order.  Defendants and their counsel shall be permitted to attend
23 | the computer inspection and deletion process referred to above.  If
24 | Defendants used any non-portable computers to store Merrill Lynch
25 | customer information, Defendants shall delete all such information
26 | and make the computers available for inspection.

27 | This Order shall remain in full force and effect until such
28 |

United States District Court
For the Northern District of California

6

1   time as this Court specifically orders otherwise.

2       Pending a preliminary injunction hearing before this Court,
3   and pursuant to the requirements of the Federal Arbitration Act, 9
4   U.S.C. §§ 3 and 4, the parties are directed to commence and to
5   proceed with arbitration in accordance with Rule 10335(b) of the
6   National Association of Securities Dealers Code of Arbitration
7   Procedure.

8       The above temporary restraining order is effective on Merrill
9   Lynch's filing an undertaking in the sum of $50,000.  Defendants
10  are ordered to show cause, at a hearing on Friday, December 3, 2004
11  at 10:00 a.m., why a preliminary injunction should not issue
12  pending arbitration.  Plaintiffs may file supplemental declarations
13  based on newly discovered facts no later than Wednesday, December
14  1, 2004.  The parties are granted leave to take expedited discovery
15  prior to the preliminary injunction hearing.

16

17      IT IS SO ORDERED.

18

19  Dated:   NOV 17 2004

20                                          CLAUDIA WILKEN
                                            United States District Judge
21

22  Copies mailed to counsel
23  as noted on the following page

24

25

26

27

28                                  7

United States District Court
For the Northern District of California

# EXHIBIT C

Oct-23-2003  09:31am   From-STROOCK&STROOC·  ·AVAN              +3105565959      T-853  P.003/011  F-056

FILED
CLERK U.S. DISTRICT COURT

OCT 22 2003

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERRILL LYNCH, PIERCE, FENNER, & SMITH, INC., | CASE NO.    EDCV 03-1204 RT |
| Plaintiff, | 1) ORDER (A) DENYING PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY, AND (B) GRANTING DEFENDANT'S REQUEST FOR A PRELIMINARY INJUNCTION; AND 2) PRELIMINARY INJUNCTION |
| v. | |
| MARK A. BREWER, | |
| Defendant. | |

The court, Judge Robert J. Timlin, has read and considered Plaintiff Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch")'s application for a temporary restraining order, Merrill Lynch's proposed order granting Merrill Lynch's application for a temporary restraining order, defendant Mark Brewer ("Brewer")'s submission regarding a proposed order granting preliminary injunction, and Brewer's proposed order granting preliminary injunction. Based on such consideration, the court concludes as follows:

///

///

///

///

1

## I.

## BACKGROUND

Brewer worked as a financial advisor for Merrill Lynch's Riverside, California office. At the beginning of his employment with Merrill Lynch, Brewer signed Merrill Lynch forms entitled Financial Consultant Trainee Agreement, Compliance Outline for Private Client Financial Consultations, Guidelines for Business Conduct, and Conflict of Interest. By signing the Financial Consultant Trainee Agreement, Brewer acknowledged that "all records (whether originals, copies or computerized) containing customer information, including but not limited to names and addresses, are the proprietary information of Merrill Lynch. . . ." Brewer also agreed that he would "not disclose to any person, firm, association, partnership, corporation or other entity, the contents, in whole or in part, of such records and documents." Furthermore, Brewer consented to, in the event of his resignation or termination, "not compete with Merrill Lynch for a period of 90 days from the day of termination within 100 miles of the office of Merrill Lynch" where he was employed.

Brewer signed the Financial Consultant Trainee Agreement in consideration of Merrill Lynch employing him, paying him, providing employment benefits, training, registration with various exchanges, proper licensing, and office facilities and support.

In addition, Brewer signed a Conflict of Interest agreement, in which he agreed not to "disclose to another any confidential information or business secrets relating to Merrill Lynch," during or after his employment there.

Financial advisors at Merrill Lynch are provided with access to confidential information regarding only the clients that the advisor services. Financial advisors are permitted to access confidential information on a "need to know basis." Each financial advisor must use a confidential password to gain access to Merrill Lynch's computer system containing confidential client information.

On October 10, 2003, Brewer resigned from Merrill Lynch in order to accept a position with another brokerage firm, A.G. Edwards & Sons ("A.G. Edwards"). Since his resignation, Brewer and A.G. Edwards have solicited Merrill Lynch customers by sending letters to many, if not

1  all, of the Merrill Lynch customers Brewer serviced at Merrill Lynch. These mailings include a

2  solicitation letter from Brewer[1], a solicitation letter from the A.G. Edwards branch manager, pre-

3  filled account transfer forms using the customers' confidential Merrill Lynch account numbers,

4  Brewer's new business card, and promotional brochures about A.G. Edwards.

5       On October 16, 2003, Merrill Lynch filed a complaint for injunctive relief, alleging claims

6  for: 1) breach of contract; 2) misappropriation of trade secrets; 3) breach of fiduciary duty; 4) unfair

7  competition; and 5) interference with contract. Brewer, on October 20, 2003, filed a submission in

8  which he did not oppose Plaintiff's request for a TRO; in addition, Brewer submitted a proposed

9  order for a preliminary injunction.

10                                      II.

11                                  **ANALYSIS**

12       The Court has inherent authority to grant preliminary injunctive relief in the exercise of its

13  equitable powers. See In re Estate of Ferdinand Marcos, Human Rights Litig., 25 F.3d 1467, 1476

14  (9th Cir. 1994) ("It is unquestionable that it is within the district court's authority to issue a

15  preliminary injunction where final equitable relief is sought."). A party seeking a TRO must satisfy

16  the same requirements that must be satisfied by parties seeking preliminary injunctions.

17       The applicant must show either (1) a combination of probable success on the merits and the

---

18

19  [1]The letter from Brewer reads as follows:
       I have recently left Merrill Lynch to join A.G. Edwards & Sons, Inc.
20     As you will read in the enclosed brochure, the many advantages of
       working with A.G. Edwards result in an exciting opportunity for
21     both you and me.

22     I have put together a transition team headed by my assistant, Teresa
       Schaefer to help guide up through this process. Please don't hesitate
23     to call either of us at (909) 784-8700 or (800) 543-3921 to answer
       any questions or concerns you may have.

24
       I believe you'll be as pleased with A.G. Edwards as I am. A.G.
25     Edwards is a nationally recognized, full-service brokerage firm
       committed to the success of its clients since 1887.

26     Please take a few minutes to read the enclosed brochure, which
27     explains a little more about A.G. Edwards. I'll call you soon to
       answer any questions you may have. Until then, you can reach me at
28     my new phone number listed above.

                                    3

1   possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships
2   tips sharply in the moving party's favor. See Rodeo Collection, Ltd. v. West Seventh, 812 F.2d
3   1215, 1217 (9th Cir. 1987). These are not two distinct tests, but rather the opposite ends of a single
4   "continuum in which the required showing of harm varies inversely with the required showing of
5   meritoriousness." Id. at 1217. However, in any situation, the Court must find that there is at least a
6   fair chance of success on the merits, see Johnson v. California State Bd. of Accountancy, 72 F.3d
7   1427, 1430 (9th Cir. 1995), and that there is some threat of an immediate irreparable injury, even if
8   that injury is not of great magnitude. See Big Country Foods, Inc. v. Board of Ed. of the
9   Anchorage School Dist., 868 F.2d 1085, 1088 (9th Cir. 1989).

10  A.      This Court is a Proper Forum in Which to Request a TRO

11          While courts have authority to issue preliminary injunctive relief pending arbitration, before
12  a court can issue such relief, it  must first make a finding that the arbitration process would be
13  rendered a "hollow formality" in the absence of preliminary injunctive relief. See Merrill Lynch,
14  Pierce, Fenner & Smith v. Bradley, 756 F.2d 1048, 1053 (4th Cir. 1985) ("[A] district court has the
15  discretion to grant a preliminary injunction to preserve the status quo pending the arbitration of the
16  parties' dispute if the enjoined conduct would render that process a 'hollow formality.'"). The
17  arbitration process would be rendered a hollow formality if the arbitral award could not return the
18  parties to the status quo. Id. at 1053-54.

19          Toward this end, the National Association of Securities Dealers ("NASD") has recently
20  amended its Code of Arbitration Procedure to allow a member to seek a temporary injunctive order
21  from a court of competent jurisdiction, "provided that an arbitration hearing on a request for
22  permanent injunctive relief . . . has not yet begun." See NASD Code § 10335(a)(1) ("
23  §10335(a)(1)").

24          The Ninth Circuit, in PMS Distributing Co., Inc. v. Huber & Suhner, A.G., 863 F.2d 639
25  (9th Cir. 1988), has held that "a district court can grant injunctive relief in an arbitrable dispute
26  pending arbitration, provided the prerequisites for injunctive relief are satisfied." Id. at 641.
27
28  Some courts interpret PMS Distributing as authorizing district courts to award preliminary

                                           4

1  injunctive relief only upon finding that injunctive relief will "preserve the status quo pending

2  arbitration and, ipso facto, the meaningfulness of the arbitration process." Id. at 641-42 (quoting

3  Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 51 (1st Cir.1986)).

4

5      This court does not read either PMS Distributing or Teradyne as requiring that the court

6  first must find that Merrill Lynch could not obtain a TRO through the arbitration process before the

7  court could issue a TRO. In Teradyne, the First Circuit held "that a district court can grant

8  injunctive relief in an arbitrable dispute pending arbitration, provided the prerequisites for

9  injunctive relief are satisfied." 797 F.2d at 51.  Similarly, the Ninth Circuit held in PMS

10 Distributing, "The fact that a dispute is arbitrable and that the court so orders under Section 4 of the

11 Arbitration Act, 9 U.S.C. § 4, does not strip it of authority to grant a writ of possession pending the

12 outcome of the arbitration so long as the criteria for such a writ are met." A TRO and a preliminary

13 injunction are forms of discretionary equitable relief. See Continental Airlines, Inc. v. Intra

14 Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994). Whether issuing such relief would preserve the

15 meaningfulness of the arbitration process is a factor for the court to consider in exercising its

16 discretion. PMS Distributing does not mandate that the court find that a subsequent arbitration

17 award would be rendered meaningless unless the court issued preliminary injunctive relief.

18

19      In the instant case, it is important to note that Merrill Lynch, as a member of NASD, could

20 have sought the relief it seeks here from an NASD arbitrator. This fact distinguishes this case from

21 Bradley, Teradyne, and PMS Distributing, where there was no indication that the arbitrators were

22 authorized to award preliminary injunctive relief. However, the consideration underlying all of

23 those cases was respect for and deference to the parties' agreement to arbitrate. In the instant case,

24 the issuance of a preliminary injunction by this court would not be contrary to the parties'

25 arbitration agreement. Brewer acknowledged in the Financial Consultant Agreement that Merrill

26

27

28

5

1  Lynch could seek a TRO or preliminary injunction from a district court.[2] In addition, while Section

2  10335(d)(1)(A) authorizes arbitrators to award immediate injunctive relief, it also recognizes that

3  parties may seek a TRO from "a court of competent jurisdiction." Merrill Lynch's application for a

4  TRO from this court is consistent with the parties' agreement to arbitrate the merits of their dispute

5  and this court is a proper forum for consideration of such application.

6

7  B.    Likelihood of Success on the Merits & Possibility of Irreparable Harm

8      As noted above, parties seeking a TRO must show either (1) a combination of probable

9  success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised

10  and the balance of hardships tips sharply in the moving party's favor. See Rodeo Collection, 812

11  F.2d at 1217. In the instant case, however, Brewer does not oppose the TRO, but agrees to a

12  preliminary injunction being issued. This court will therefore assume that Brewer concedes that

13  Merrill Lynch has carried its burden of proof as to one of those two considerations.

14

15  C.    Terms of TRO and Preliminary Injunction

16      Although Brewer does not oppose this court's granting of a TRO and preliminary

17  injunction, his proposed order of a preliminary injunction differs in several areas from the proposed

18  TRO order submitted by Merrill Lynch.

19

20      First, although Merrill Lynch currently only seeks a TRO, Brewer agrees to a preliminary

21  injunction, thereby precluding the necessity of a TRO. Brewer claims that this makes Merrill

22  Lynch's request for expedited discovery relating to the need for a preliminary injunction

23

24  _____

25    [2] The relevant paragraph of the Financial Consultant Agreement provides:

26    In the event that [Brewer] violates, or is reasonably believed by Merrill Lynch to be about
     to violate, any of the provisions of the agreement, [Brewer] CONSENTS TO THE ISSUANCE BY
27    A COURT OF COMPETENT JURISDICTION, WHICH HAS JURISDICTION FOR THE GEOGRAPHIC
     LOCATION OF THE BRANCH OFFICE WHERE [BREWER] WAS EMPLOYED, TO A TEMPORARY
28    RESTRAINING ORDER OR A PRELIMINARY OR PERMANENT INJUNCTION TO PROHIBIT THE
     BREACH OF ANY PROVISION OF THIS CONTRACT.

6

1  unnecessary. In addition, Brewer requests that the prohibition on his future solicitation activities be

2  limited to a period of 90 days, as was contemplated by the Financial Consultant Agreement. Brewer

3  also requests that the Order provide him with 48 hours to return and/or purge Merrill Lynch

4  customer records—as opposed to the 24 hours suggested by Merrill Lynch's proposed order—and that

5  his counsel be allowed to retain those records for use in the arbitration proceeding currently

6  pending. Finally, Brewer proposes that the instant civil action be stayed until the arbitration

7  proceedings are completed.

8

9           As these proposed modifications of Merrill Lynch's proposed order are reasonable, the

10  court will order a preliminary injunction integrating these changes.

11

12                                      IV.

13                                **DISPOSITION**

14  ACCORDINGLY, IT IS ORDERED THAT:

15

16           1) Merrill Lynch's ex parte application for a temporary restraining order is DENIED as

17  moot; and

18           2) This court GRANTS Brewer's request for a preliminary injunction, and

19           3) Merrill Lynch's application for expedited discovery is DENIED.

20

21

22  IT IS FURTHER ORDERED PENDING FINAL DETERMINATION OF THIS ACTION THAT:

23  1) Brewer is enjoined and restrained, directly and indirectly, and whether alone or in concert with

24  others, including any agent representative, officer, or employee of Brewer's current employer, A.G.

25  Edwards, for 90 days or upon further Order of this Court, from:

26           (a) soliciting any business from, or initiating any further contact or communication with any

27  client of Merrill Lynch whom Brewer served or whose name became known to Brewer

28

                                        7

1    while in the employ of Merrill Lynch including for the purpose of inviting, encouraging, or

2    requesting the transfer of any accounts from Merrill Lynch to Clark's new employer

3

4    (excluding members of Brewer's family and relatives and those customers that reside more

5    than 100 miles from Merrill Lynch's Riverside office); and

6    (b) using, disclosing, or transmitting for any purpose, including the solicitation or

7    acceptance of business or account transfers, the information contained in the records of

8    Merrill Lynch.

9

10

11    2) IT IS FURTHER ORDERED that Brewer, and anyone acting in concert or participation with

12    Brewer, including Brewer's counsel and any agent, employee, officer or representative of Brewer's

13    current employer, A.G. Edwards, shall return to Merrill Lynch's office any and all records or

14    information pertaining to Merrill Lynch's customers whether in original, copied, computerized,

15

16    handwritten or any other form, and purge any such information from his possession, custody, or

17    control, within 48 hours of notice to Brewer or his counsel of the terms of this Order. Any records

18    or information so purged shall be printed prior to purging and be returned to Merrill Lynch

19    pursuant to this paragraph. Brewer's counsel, however, may retain copies of said records and

20    information for the sole purpose of using such in the arbitration proceeding or future proceedings in

21

22    this court; and

23

24    3) IT IS FURTHER ORDERED, pursuant to the requirement of section 3 and 4 of the Federal

25    Arbitration Act, 9 U.S.C. § 3-4, that:

26

27    (a) the parties are directed to commence and to proceed with arbitration in accordance with

28    Rule 10335(g) of the National Association of Securities Dealers Code of Arbitration

8

Oct-23-2003  09:33am    From-STROOCK&STROOCK&LAVAN                    +3105665959              T-853   P.017/011   F-055

Procedure,

(b) This action is hereby STAYED until arbitration has been concluded, except for the purposes of enforcing or interpreting this order, and

(c) pursuant to Federal Rule of Civil Procedure 65(c), Merrill Lynch shall give security in the amount of $5,000. This preliminary injunction shall become effective upon such security being filed or deposited with the Clerk of the Court.

This Order shall remain in full force and effect until such time as this court specifically orders otherwise.

10/22/03
_____
DATE

Robert J. Timlin
_____
ROBERT J. TIMLIN, DISTRICT COURT JUDGE

9



2001 WL 283083
17 IER Cases 912
(Cite as: 2001 WL 283083 (C.D.Cal.))

United States District Court, C.D. California,
Western Division.

MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED, Plaintiff

v.

Sanah CHUNG and John Barnes, Defendants

No. CV 01-00659 CBM RCX.

Feb. 2, 2001.

Anthony J. Oncidi, Russell A. Wetanson, Akin, Gump, Strauss, Hauer & Feld, LLP, and Mark L. Prior of Rubin & Associates, for Merrill Lynch.

ORDER Granting Plaintiff's Request for
Preliminary Injunction, Findings of Fact
and Conclusions of Law

MARSHALL, J.

*1 Plaintiff Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") applies for a preliminary injunction precluding Defendants Sanah Chung and John Barnes ("Defendants") from soliciting and accepting business from the Merrill Lynch clients whose accounts they serviced, or whose names they learned, while in the employ of Merrill Lynch and from using, disclosing, or transmitting information contained in Merrill Lynch's records. Merrill Lynch filed an *ex-parte* motion for temporary injunctive relief on January 22, 2001. On January 24, 2001, the Court entered temporary injunctive relief in favor of Merrill Lynch, and ordered that deposition discovery proceed in this case on an expedited basis. The Court has heard argument from counsel for the respective parties, and reviewed the parties submissions in support of and in opposition to order to show cause why preliminary injunctive relief should not issue. For the reasons that follow, the Court grants Merrill Lynch's motion for a preliminary injunction.

*FINDINGS OF FACT*

1. Merrill Lynch is a corporation organized and existing under Delaware law, with its principal place of business in New York, New York. Merrill Lynch is engaged in the business of providing financial services, including, among other things, facilitating the purchase and sale of securities and various investment products on various securities and commodities exchanges nationwide.

2. Defendants are residents of California and are former financial consultants in Merrill Lynch's Los Angeles, California office. While employed by Merrill Lynch, Defendants serviced hundreds of Merrill Lynch accounts, representing nearly $175 million in assets under Merrill Lynch management, which generated in excess of $4 million in revenues for Merrill Lynch in 2000 alone.

3. Defendant Chung commenced his employment with Merrill Lynch on or about December 1, 1994. Defendant Barnes commenced his employment with Merrill Lynch on or about July 25, 1994.

4. At the time Defendants commenced their employment with Merrill Lynch, and as a condition of their employment, Defendants executed an agreement entitled the *Financial Consultant Employment Agreement and Restrictive Covenants* (hereafter the "Agreement"), which prohibits them from soliciting any account they served or whose name became known to them during their employment at Merrill Lynch for one (1) year following the termination of their employment. The Defendants' Agreements also prohibits them from using or disclosing to third parties Merrill Lynch's confidential customer list and customer information for the customers they served or whose names became known to them at Merrill Lynch, at any time during their employment or thereafter. *See* Defendants' Agreements ¶¶ 1-2. [FN1]

> FN1. In their *Financial Consultant Employment Agreement and Restrictive Covenants* with Merrill Lynch, Defendants expressly consented to the issuance of a temporary restraining order or preliminary injunction by this Court in the event they breached the terms of their contract. (See Agreements at ¶ 4-5). It should also be noted that Defendants also both agreed to comply with various other Merrill Lynch policies and guidelines, including Merrill Lynch's *Compliance Outline for Financial Consultants,* Merrill Lynch's *Guidelines for Business Conduct,* and *Conflict of*

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2001 WL 283083
17 IER Cases 912
(Cite as: 2001 WL 283083 (C.D.Cal.))

*Interest* agreement, all of which further confirm the confidentiality of Merrill Lynch customer information and prohibit its disclosure.

5. During the course of their employment, Merrill Lynch provided Defendants with numerous benefits and opportunities including, but not limited to, introductory and advanced securities training, compensation, employment related benefits, access to Merrill Lynch's confidential and proprietary client information and records, and operational and sales support.

*2 6. Defendants resigned from Merrill Lynch's Los Angeles, California office, without prior notice, on Friday January 12, 2001 and immediately joined a competitor of Merrill Lynch, Salomon Smith Barney, Inc. ("Smith Barney"), located in Los Angeles, California.

7. Merrill Lynch alleged that Defendants copied and removed information pertaining to the customers they serviced at Merrill Lynch. Merrill Lynch alleged that Defendants utilized customer information to prepare a mass mailing to the customers to announce their affiliation with Smith Barney and then sent out this mass mailing to the Merrill Lynch customers whose accounts they serviced. Merrill Lynch also alleged that Defendants removed and disclosed Merrill Lynch customer information including customer names, addresses, telephone numbers, account numbers, asset values, account titles, and more.

8. Merrill Lynch alleged that Defendants personally telephoned Merrill Lynch customers to engage them in conversations concerning the products and services offered by their new employer and to otherwise solicit Merrill Lynch customers to transfer their accounts to them at Smith Barney. Merrill Lynch argued that Defendants' use of the telephone inherently crosses over from mere announcement to direct or indirect solicitation; and Merrill Lynch noted that the context of a phone call cannot be verified as a written statement can and, this therefore, opens up the door for potential abuse. Merrill Lynch also argued that a telephone call inherently allows Defendants to apply more pressure on the client to transfer his/her accounts compared to the receipt of a tombstone-type

announcement.

9. While the Defendants opposed Merrill Lynch's motion for a preliminary injunction, they did not deny that they signed their respective Agreements with Merrill Lynch, or that they removed Merrill Lynch customer information and personally telephoned Merrill Lynch clients.

10. Defendants argued that their conduct was proper because their communication with Merrill Lynch clients complied with California law that allows a former employee to notify customers when he switches employment as long as the notice does not constitute a solicitation. Defendants claims that their telephone conversations adhered to this aspect of California law and that any discussion that may have followed regarding their new firm was initiated by clients.

### CONCLUSIONS OF LAW
Jurisdiction

11. The parties agree that the merits of this dispute will be resolved in arbitration before the National Association of Securities Dealers ("NASD"). The Court finds, however, that it has jurisdiction to enter a preliminary injunction in order to preserve the *status quo* pending a final determination of the merits of this dispute by the NASD arbitration panel. *See, e.g., PMS Distrib. Co. v. Huber,* 863 F.2d 639 (9th Cir.1988). *Accord American Express Fin.* Advisors, Inc. v. Makarewicz, 122 F.3d 936, 940 (11 th Cir.1997); *American Express Fin. Advisors,* Inc. v. Thorley, 147 F.3d 229, 231-32 (2 nd Cir.1998); *Merrill Lynch, Pierce, Fenner & Smith* Inc. v. Dutton, 844 F.2d 726 (10 th Cir.1988); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Bradley, 756 F.2d 1048 (4 th Cir.1985).

*3 12. In addition, the NASD Code of Arbitration Procedure (the "Code") also specifically provides that "parties to the arbitration may seek injunctive relief either within the arbitration process or from a court of competent jurisdiction." NASD Code Rule 10335.

13. Furthermore, Merrill Lynch and Defendants specifically agreed in their Agreements that Merrill Lynch would be entitled to seek temporary and preliminary injunctive relief pending an arbitration hearing on the merits before a full panel of

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2001 WL 283083
17 IER Cases 912
(Cite as: 2001 WL 283083 (C.D.Cal.))

arbitrators. (*See* Agreement at ¶¶ 4-5); *see also* Thorley, 147 F.3d at 231-32 (reversing district court for refusing to consider plaintiff's motion for temporary injunctive relief and stating "the contracts at issue explicitly state that the plaintiff is entitled to seek a temporary injunction in a court of competent jurisdiction while waiting for arbitration to occur"); *American Express Fin. Advisors, Inc. v.* Makarewicz, 122 F.3d 936, 940 (11 th Cir.1997) (holding that a similar provision calling for injunctive relief in court pending NASD arbitration "leaves no room for ambiguity: the parties intended to allow 'a court of competent jurisdiction'-- the United States District Court for the Middle District of Florida--to provide injunctive relief. Therefore, we hold that the district court erred in denying injunctive relief on the ground that the parties intended the arbitrator to decide whether to grant such relief."), *cert. denied,* 523 U.S. 1022, 118 S.Ct. 1303, 140 L.Ed.2d 469 (1998).

14. Therefore, the Court concludes that it has jurisdiction to issue a preliminary injunction to preserve the status quo pending a final determination of the merits of this dispute in arbitration.

### Merrill Lynch Is Entitled to Preliminary Injunctive Relief

15. Having determined that this Court has jurisdiction to grant a preliminary injunction, the Court now turns to Merrill Lynch's application. Under Ninth Circuit standards, a party is entitled to preliminary injunctive relief when it shows either (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) the existence of serious questions going to the merits and the balance of hardships tipping in the movant's favor. *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d at 511, 516 (9 th Cir.1993). " 'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." ' *Id.* (*quoting Diamontiney v. Borg,* 918 F.2d 793, 795 (9 th Cir.1990)).

16. Merrill Lynch has alleged five causes of action: misappropriation of trade secrets, breach of contract, breach of fiduciary duty, unfair competition in violation of Business and Professional Code section 17200, and tortious

interference with prospective economic advantage.

17. In this case, Merrill Lynch has established at the very least that there are serious questions on the merits, and that the balance of hardships tips sharply in its favor; and thus, has satisfied the standards for issuance of a preliminary injunction. First, Merrill Lynch is likely to succeed on the merits of its claim to protect its trade secret customer list and customer information.

*4 18. California has adopted the Uniform Trade Secrets Act which provides for injunctive relief to protect an employer's trade secret customer list. *See* Cal. Civ.Code § 3426 *et seq.* California courts applying the Act, including the Ninth Circuit, repeatedly have issued injunctive relief enjoining employees from soliciting their former employer's customers. *See MAI Systems,* 991 F.2d at 520-22; *Morlife, Inc. v. Perry,* 56 Cal.App.4 th 1514, 1522-23 (1997); *Courtesy Temporary Serv., Inc. v.* Camacho, 222 Cal.App.3d 1278, 1287, 272 Cal.Rptr. 352 (1990); *American Credit Indem., Co.* v. Sacks, 213 Cal.App.3d 622, 262 Cal.Rptr. 92 (1989); *see also Hollingsworth Solderless Terminal* v. Turley, 622 F.2d 1324, 1332-34 (9 th Cir.1980); Greenly v. Cooper, 77 Cal.App.3d 382, 392, 143 Cal.Rptr. 514 (1977).

19. Moreover, courts applying the Uniform Trade Secrets Act have held that customer lists may be entitled to trade secret protection. *Courtesy* Temporary Serv., Inc. v. Camacho, 222 Cal.App.3d 1278, 1287, 272 Cal.Rptr. 352 (1990); *Morelife, Inc. v. Perry,* 56 Cal.App.4th 1514, 1522-23, 66 Cal.Rptr.2d 731 (1997).

20. The Court finds that Merrill Lynch has taken measures to protect the secrecy of its confidential customer list and customer information which are reasonable under the circumstances, including requiring Defendants to sign agreements which prohibited the use or disclosure of Merrill Lynch's confidential and proprietary customer information. Therefore, this information is entitled to trade secret status under the California Uniform Trade Secrets Act. *See MAI Systems,* 991 F.2d at 521 ("Furthermore, MAI took reasonable steps to insure the secrecy to [its customer] information as required by the UTSA. MAI required its employees to sign confidentiality agreements respecting its trade secrets, including the Customer Database.").

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2001 WL 283083
17 IER Cases 912
(Cite as: 2001 WL 283083 (C.D.Cal.))

21. The Court also finds that Defendants' conduct constitutes a misappropriation of this customer information under the California Uniform Trade Secrets Act, Cal. Civ.Code § 3426-1, because "misappropriation occurs if information from a customer database is used to solicit customers." *MAI Systems,* 991 F.2d at 521.

22. Defendants' mailing of the written announcements alone did not constitute solicitation under California law. However, Defendants did solicit Merrill Lynch customers by placing direct and personal follow-up calls to Merrill Lynch customers. The evidence demonstrates that, on January 12, 2001, Defendants mailed written announcements to Merrill Lynch customers via messenger service, express mail and first class mail. On January 12 and 13, 2001, Defendants further contacted these same Merrill Lynch customers by telephone. During the phone calls initiated by Defendants, Defendants discussed with the customers the potential transfer of the customers' accounts, the differences between Merrill Lynch and Smith Barney, and, in at least one conversation, why Smith Barney is better than Merrill Lynch. This evidence demonstrates that Defendants most likely stepped over the line between an announcement of new employment and solicitation in their telephone contacts with the Merrill Lynch customers. This conduct constitutes a breach of contract and extends beyond the scope of the announcement doctrine under California law. *See MAI Systems,* 991 F.2d at 521.

*5 23. Second, Merrill Lynch is likely to succeed on the merits to enforce its Agreements with Defendants which contain reasonable restrictions prohibiting Defendants from soliciting any clients whose accounts they serviced or whose names they learned while employed by Merrill Lynch and from using or disclosing any confidential information, documents or records pertaining to these clients. These Agreements are enforceable under California law. *See John F. Matull & Assocs., Inc. v. Cloutier,* 194 Cal.App.3d 1049, 1054, 240 Cal.Rptr. 211 (1987) (finding that section 16600 of the California Business and Professions Code does not "invalidate an employee's agreement not to disclose his former employer's confidential customer lists or other trade secrets or not to solicit these customers."); *Fowler v. Varian Assocs., Inc.,* 196 Cal.App.3d 34, 44, 241 Cal.Rptr. 539 (1987) ("[A]greements designed to

protect an employer's proprietary information do not violate section 16600.").

24. The Court determines, therefore, that Merrill Lynch has demonstrated a likelihood that it will prevail on the merits of its claims to protect its trade secret customer list, to enforce the Defendants' Agreements, and to prevent unfair competition.

25. Next, the Court concludes that Merrill Lynch will suffer irreparable harm absent the entry of injunctive relief.

26. California courts have held that the solicitation of a company's clients by one of its former employees causes irreparable harm. *See, e.g.* American Credit, 213 Cal.App.3d at 637-38, 262 Cal.Rptr. 92; *Courtesy,* 222 Cal.App.3d at 1278, 272 Cal.Rptr. 352; *State Farm Mut. Auto. Ins. Co. v. Dempster,* 174 Cal.App.2d 418, 344 P.2d 821 (1960).

27. The Court finds that in the present case Merrill Lynch will suffer irreparable harm as a result of the breach of client confidentiality, conversion of Merrill Lynch's property and information, incalculability of damages, loss of goodwill, and the threat to client stability and procedures caused by Defendants' violations. *See, e.g., Bradley,* 756 F.2d at 1055 ("Merrill Lynch faced irreparable, non-compensable harm in the loss of its customers" as a result of defendant's breach of non-solicitation agreement); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Stidham,* 658 F.2d 1098, 1102 n. 8 (5th Cir.1981) ("The injury here is such that damages could not adequately compensate. Were defendants permitted by the law to exploit the clientele of their former employers, every investment that reasonably flowed from the exploitation should be included in the damages award. How such a figure could be arrived atescapes us."); *Kramer,* 816 F.Supp. at 1244 ("Plaintiffs argue with equal strength that irreparable and immeasurable harm lies in the fact that Merrill Lynch clients, when they discover that their financial information, market transactions, and investment assets which presumed were held in confidence have been disclosed, will lose trust and confidence in Merrill Lynch ."); *Hegarty,* 808 F.Supp. at 1560 n. 3 (concluding that damages from loss of customers are incalculable and further noting that "monetary damages cannot compensate Plaintiff for Defendant's unilateral breach of client