2001 WL 283083
17 IER Cases 912
(Cite as: 2001 WL 283083 (C.D.Cal.))

confidentiality ... [nor] the example Defendant's action set for other Merrill Lynch employees....").

*6 28. Furthermore, the balance of hardships tips heavily in favor of granting injunctive relief because an injunction merely prohibits Defendants from misappropriating the trade secrets of Merrill Lynch, and requires them to comply with the reasonable terms of their Agreements. An injunction will not prevent the Defendants from continuing their employment in the securities industry, will not interfere with their ability to acquire even a fairly limited number of clients of the thousands of potential clients in the area, or from working for Smith Barney in the community in which Defendants have chosen to work. See *Boughton v. Socony Mobil Oil Co.*, 231 Cal.App.2d 188, 192, 41 Cal.Rptr. 714 (1964) (while Section 16600 bans restraints on pursuit of an entire business, "where one is barred from pursuing only a small or limited part of the business, trade or profession, the contract has been upheld as valid.").

29. The Court also finds that issuance of an injunction will promote the public interest in (i) the protection of trade secret client lists and other confidential and trade secret information, see Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974) ("It is hard to see how the public would be benefitted by disclosure of customer lists."); *Zimmerman*, 1996 WL 707107 at *2 ("[T]here is a strong public interest in favor of protecting trade secrets."), and (ii) the enforcement of reasonable contracts, see Johanneman v. Merrill Lynch, Pierce, Fenner & Smith Inc., 1993 WL 835533 (E.D.Ky.1993) ("The court is of the opinion that it would be in the public interest to enforce the reasonable term of employment contracts."); *Kramer*, 816 F.Supp. at 1248 ("To deny injunctive relief in this case would ... jeopardize the integrity of the securities industry to the detriment of the public interest [and] ... would cast doubt on the integrity of contractual agreements.").

30. In addition, the Court finds that Defendants must be enjoined from accepting business or account transfers from clients whom they wrongfully solicited prior to the entry of the Court's temporary injunction order. This is necessary because "[n]ot only should the employee be enjoined from the solicitation of his former

customers, but the court's order should prohibit the new employer from obtaining the benefits of such an unfair practice, thereby making the remedy complete." *George v. Burdusis*, 21 Cal.2d 153, 163, 130 P.2d 399 (1942).

31. To hold otherwise would allow Defendants to reap the benefits of their unlawful use of trade secret information and solicitations and encourage other similarly situated employees to engage in the same conduct in the future. See *Morlife*, 56 Cal.App.4th at 1527, 66 Cal.Rptr.2d 731 (The court "enjoined appellants from doing business with any of the 32 entities who switched their business from Morlife to Burlingame after being unlawfully solicited."). Moreover, Defendants have agreed to this prohibition by the terms of their employment Agreement. See Agreements at paragraphs 4-5.

*7 32. In conclusion, Merrill Lynch has satisfied the elements for, and is entitled to, a preliminary injunction.

33. Finally, Rule 10335(g) of the NASD Code of Arbitration Procedure provides that if a court issues an injunction against one of the parties to an arbitration agreement, then the arbitration "concerning the matter of the injunction shall proceed in an expedited manner according to a time schedule and procedures specified by the panel appointed under [the NASD] Code." See NASD Code of Arbitration Procedure Rule 10335(g). Accordingly, the Court orders the parties to proceed to expedited arbitration hearings on the merits before a panel of NASD arbitrators pursuant to NASD Rule 10335(g).

### PRELIMINARY INJUNCTION ORDER

AND NOW, this 2 day of February, 2001, after thorough consideration of all the arguments by counsel for the parties, and for the reasons set forth in the accompanying findings of fact and conclusions of law, it is hereby ORDERED that:

1. A Preliminary Injunction shall issue immediately and become effective upon Plaintiff's posting of a security in the amount of $200,000.00.

2. Defendants are enjoined and restrained, directly and indirectly, and whether alone or in concert with others, including any agent, representative, officer,

2001 WL 283083
17 IER Cases 912
(Cite as: 2001 WL 283083 (C.D.Cal.))

or employee of Defendants' current employer, Smith Barney, from:

(a) soliciting any business from, or initiating any further contact or communication with any customer of Plaintiff whom Defendants served or whose name became known to Defendants while in the employ of Plaintiff including for the purpose of inviting, encouraging, or requesting the transfer of any accounts from Plaintiff (excluding members of Defendants' immediate families);

(b) accepting any business or account transfers from any customers of Plaintiff whom Defendants, or anyone acting on Defendants' behalf or in concert with Defendants, have solicited at any time in the past for the purpose of doing business with Defendants' new employer (excluding members of Defendants' immediate families);

(c) accepting any business, including account transfers, from any customer whose records or information Defendants used in violation of their contractual and trade secret obligations to Plaintiff, including Defendants' *Financial Consultant Employment Agreement and Restrictive Covenants*, and any customer whom Defendants may have contacted through the use of information by Defendants while in the employ of Plaintiff (excluding members of Defendants' immediate families); and

(d) using, disclosing, or transmitting for any purpose, including the solicitation or acceptance of business or account transfers, the information contained in the records of Merrill Lynch; and that all original records and copes and/or other reproductions thereof, in whatever form, be returned to Merrill Lynch immediately.

3. Defendants, and anyone acting in concert or participation with Defendants, including Defendants' counsel and any agent, employee, officer or representative of Defendants' current employer, is further ordered to return to Plaintiff's Los Angeles, California office any and all records or information pertaining to Plaintiff's customers which were obtained from Plaintiff whether in original, copied, computerized, handwritten or any other form, and purge any such information from his possession, custody, or control, within 24 hours of notice to Defendants or their counsel of the terms of this Order provided, however, that any information so purged shall be printed prior to

purging and be returned to Plaintiff pursuant to this paragraph and consistent with paragraph (2)(d) above.

*8 4. Pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. § 3-4, the parties are directed to commend and to proceed with arbitration in accordance with Rule 10335(g) of the National Association of Securities Dealers Code of Arbitration Procedure.

IT IS SO ORDERED.

2001 WL 283083, 2001 WL 283083 (C.D.Cal.), 17 IER Cases 912

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

# EXHIBIT E

127 F.Supp.2d 1305
(Cite as: 127 F.Supp.2d 1305)

United States District Court,
C.D. California.

MERRILL LYNCH, PIERCE, FENNER & SMITH
INC., a Delaware corporation,
Plaintiff,
v.
Sanae GARCIA and Brian A. Garcia Defendants.

No. 00-09292 CM (SHx).

Sept. 7, 2000.

Securities firm sued former employees, alleging that the employees had wrongfully solicited the firm's customers, and seeking injunctive relief. The District Court, Moreno, J., held that the firm would be granted preliminary injunctive relief barring the former employees from accepting business from firm customers who were wrongfully solicited.

Ordered accordingly.

West Headnotes

[1] Master and Servant ⊂═50
255k50 Most Cited Cases

Under California law, merely informing customers of one's former employer of a change of employment, without more, is not prohibited "solicitation."

[2] Injunction ⊂═138.33
212k138.33 Most Cited Cases

Securities firm would be granted preliminary injunctive relief against former employees, barring the employees from accepting business from firm customers who were wrongfully solicited; the firm made a strong showing of likelihood of success on the merits on a trade secrets claim under California law arising from the employees' new employer contacting the firm's customers and providing them with documentation to transfer their accounts.
*1305 Mark Prior, Rubin & Associates, Paoli, PA, Anthony J. Oncidi, Christina T. Nguyen, Troop Steuber Pasich Reddick & Tobey, Los Angeles, CA, for plaintiff.

Howard O. Boltz, Jr., Christopher Frank Wong,

Bryan Cave, Santa Monica, CA, for defendants.

ORDER GRANTING PLAINTIFF
PRELIMINARY INJUNCTION

MORENO, District Judge.

Presently before the Court is Plaintiff's Motion for a Preliminary Injunction. Having read the supporting papers and having heard oral argument, the Court hereby *grants* Plaintiff's Motion for a Preliminary Injunction.

I.
*Discussion*
A. Factual Background

On August 25, 2000, Defendants Sanae Garcia and Brian Garcia resigned from Merrill Lynch and immediately began working at Merrill Lynch's competitor Salomon Smith Barney, Inc. ("Smith Barney"). Following their departure, Plaintiffs contacted some of their former clients at Merrill Lynch to inform them of their change of employment. *See* Schweitzer Suppl. Decl. at Ex. A. Also on August 25, a Smith Barney vice president wrote to some of Merrill Lynch's customers and provided them with documentation to transfer their accounts to Smith Barney. *See* Schweitzer Suppl. Decl. at Ex. B.

B. Analysis

In the Ninth Circuit, a party may obtain preliminary injunction relief by sastisfying one of two tests. The traditional test requires "1) a strong likelihood of success on the merits, 2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public. interest [.]" *Johnson v. California State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir.1995).

*1306 In their papers, Plaintiff argues that Defendants have wrongfully solicited Merrill Lynch customers. As relief, Plaintiff requests in part that the Court a) enjoin Defendants from soliciting Merrill Lynch's customers and b) that Defendants and Smith Barney be enjoined from accepting business from customers who were wrongfully solicited.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

127 F.Supp.2d 1305
(Cite as: 127 F.Supp.2d 1305)

[1] It is important to note that California courts have stressed that there is a distinction between "solicitation [FN1]--which is actionable--from announcing a job change--which is not: 'Merely informing customers of one's former employer of a change of employment, without more, is not solicitation." *Hilb v. Robb*, 33 Cal.App.4th 1812, 1821, 39 Cal.Rptr.2d 887 (1995) (quoting *Aetna* Bldg. Maintenance Co. v. West, 39 Cal.2d 198, 204, 246 P.2d 11 (1952)); *see also Merrill Lynch Pierce Fenner & Smith v. Breeden*, No. C99- 20793 (N.D.Cal.1999). In addition, the court in *American Credit Indemnity Co. v. Sacks*, 213 Cal.App.3d 622, 636, 262 Cal.Rptr. 92 (1989) recognized that "basic to an individual's right to engage in fair competition" is the right to announce one's new affiliation. *Id.* at 636, 262 Cal.Rptr. 92.

> FN1. The California Supreme Court has defined "solicitation" to mean "To urge to (for something); to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving." *Aetna* Bldg. Maintenance Co. v. West, 39 Cal.2d 198, 203-204, 246 P.2d 11 (1952).

[2] Here, the Court finds that Plaintiff has made a strong showing of likelihood of success on the merits on a trade secrets claim arising from Smith Barney contacting Merrill Lynch customers and providing them with documentation to transfer their accounts. *See* Schweitzer Suppl. Decl. at Ex. B; *see* American Credit, 213 Cal.App.3d at 636, 262 Cal.Rptr. 92 (finding defendant's letter to plaintiff's customer constituted solicitation). California courts have found "solicitation" to be proscribable conduct under the Uniform Trade Secrets Act. *See* Morlife, Inc. v. Perry, 56 Cal.App.4th 1514, 1524, 66 Cal.Rptr.2d 731 (1997).

In fashioning a remedy for wrongful solicitation, California courts have enjoined defendants from accepting business from customers who were wrongfully solicited. In *Morlife*, for example, the defendant was enjoined from "doing business" with any customer who was wrongfully solicited. *Morlife*, 56 Cal.App.4th at 1527, 66 Cal.Rptr.2d 731; *see also* George v. Burdusis, 21 Cal.2d 153, 163, 130 P.2d 399 (1942) (Not only should the employee be enjoined from the solicitation of his former customers, but the court's order should prohibit the

new employer from obtaining the benefits of such an unfair practice). [FN2] Accordingly, the Court finds that Defendants may be enjoined from accepting business from any Merrill Lynch customers who were wrongfully solicited. The letter sent to Stephen and Manuel Rosales constituted improper solicitation, and Smith Barney is enjoined from accepting account transfers from any Merrill Lynch customer who received such a letter.

> FN2. At oral hearing, counsel for Defendant was unable to cite any cases to the contrary.

THE COURT HEREBY FINDS THAT:
1. Plaintiff has established a strong likelihood of success on the merits on its claims for injunctive relief;
2. There is a possibility of irreparable injury to Plaintiff if the preliminary relief is not granted;
3. The balance of hardships favors Plaintiff;
4. The public interest is advanced by granting injunctive relief thus protecting client property and Plaintiff's trade secrets.

THEREFORE IT IS HEREBY ORDERED THAT:
1. A Preliminary Injunction Order shall issue immediately and that Plaintiff post security in support thereof in the *1307 amount of *$100,000* by no later than September 15, 2000;
2. Defendants are enjoined and restrained, directly and indirectly, and whether alone or in concert with others, including any agent, representative, officer, or employee of Defendants' current employer, Salomon Smith Barney Inc. until the Court specifically orders otherwise, from:
a. soliciting any business from any client of Plaintiff whom Defendants served or whose name became known to Defendants while in the employ of Merrill Lynch and, further, from accepting any business or account transfers from any of said clients whom Defendants have solicited at any time in the past for the purpose of doing business with Defendants' present employer, Salomon Smith Barney Inc. (excluding Defendants' immediate family members); and
b. using, disclosing, or transmitting, including for purposes of soliciting said clients, (i) information contained in the records of Plaintiff, including the names, addresses, and financial information of

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

127 F.Supp.2d 1305
(Cite as: 127 F.Supp.2d 1305)

said clients, (ii) financial information, investment objectives, or account information of any of said clients, and (iii) other confidential information, trade secrets, and commercially sensitive materials; and (iv)that all original records and copies and/or reproductions and/or computerized records thereof, in whatever form, be immediately returned to Plaintiff's Beverly Hills office within twenty-four (24) hours of service of this Order upon Defendants or their legal counsel.

IT IS SO ORDERED.

127 F.Supp.2d 1305

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works



# EXHIBIT F

1  Priority
   Send
2  Enter
   Closed
3  JS-5/JS-6
   JS-2/JS-3    **ENTERED**
4  Scan Only

5                    AUG 21 2001

6
             CLERK, U S DISTRICT COURT
7        CENTRAL DISTRICT OF CALIFORNIA
             EASTERN DIVISION
8        BY ———————— DEPUTY

FILED
CLERK, U S DISTRICT COURT

AUG 20 2001

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

8        UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  MERRILL LYNCH, PIERCE, FENNER &          CASE NO  EDCV 01-581 RT (SGLx)
    SMITH INC.,
12                                            ORDER 1) GRANTING PLAINTIFF'S
          Plaintiff,                          APPLICATION FOR A TEMPORARY
13                                            RESTRAINING ORDER AND
          v.                                  EXPEDITED DISCOVERY AND 2)
14                                            SETTING HEARING ON APPLICATION
    ANDREW R. CLARK,                          FOR A PRELIMINARY INJUNCTION.
15
          Defendant
16
                                   **THIS CONSTITUTES NOTICE OF ENTRY
17                                 AS REQUIRED BY FRCP, RULE 77(D).**

18
        The court, Judge Robert J. Timlin, has read and considered Merrill Lynch, Pierce, Fenner &
19
20  Smith Inc. ("Merrill Lynch")'s application for a temporary restraining order ("TRO") and

21  expedited discovery and defendant Andrew R. Clark ("Clark")'s opposition. Based on such

    consideration, the court concludes as follows·          ENTER ON ICMS
22
                                    I.                       AUG 21 2001
23
                              **BACKGROUND**[1]
24
        Clark worked as a financial advisor for Merrill Lynch's Palm Springs, California office. At
25
    the start of his employment with Merrill Lynch, Clark signed Merrill Lynch's Financial Consultant

    ─────────────────────────
        [1] The following background is taken from the declaration of Michael L. Lovett ("Lovett")
    and attached exhibits, supplemental declaration of Lovett and attached exhibits, declaration of
    Clark, and the exhibits attached to the complaint.

                                        1                        (14)

08-21-01  16:53  From-LUCE FORWARD HAMILTON AND SCRIPPS LLP  2138927737  T-645  P.03/15  F-791
DC ·                          8/21/01 1:48  PAGE  3/15  RIGHTFAX

1  Employment Agreement and Restrictive Covenants ("Financial Consultant Agreement"). By

2  signing the Financial Consultant Agreement, Clark recognized that "[a]ll records, whether original,

3  duplicated, computerized, memorized, handwritten, or in any other form, and all information,

4  contained therein, including names, addresses, phone numbers, and financial information of any

5  account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole

6  and exclusive property of Merrill Lynch"(emphasis in original)  He agreed "not to divulge or

7  disclose this information to any third party and under no circumstances will I reveal or permit this

8  information to become known by any competitor of Merrill Lynch either during my employment or

9  at any time thereafter." Further, if Clark resigned or was terminated from Merrill Lynch, he

10  agreed

11     that for a period of one year following my termination I will not solicit by mail, by
       phone, by personal meeting, or by any other means, either directly or indirectly, any
12     Account whom I served or whose name became known to me during my
       employment at Merrill Lynch in any office and in any capacity. My agreement 'not
13     to solicit' means that I will not, during my employment and for a period of one year
       thereafter, initiate any contact or communication, of any kind whatsoever, for the
14     purpose of inviting, encouraging or requesting any Account
       (a) to transfer from Merrill Lynch to me or to my new employer, or
15     (b) to open a new account with me or with my new employer, or
       (c) to otherwise discontinue its patronage and business relationship with Merrill
16     Lynch.

17     Clark signed the Financial Consultant Agreement in consideration of Merrill Lynch

18  employing him, paying him, providing employment benefits, providing training, registering him

19  with various exchanges, licensing him, and providing him with office facilities and support

20     Additionally, Clark signed Conflict of Interest agreements, in which he agreed that he

21  would not, "during or after my employment with Merrill Lynch, use or disclose to another any

22  confidential information or business secrets relating to Merrill Lynch."

23     Financial advisors at Merrill Lynch are provided with access to confidential information

24  regarding only the clients that the advisor services. Financial advisors are permitted to access

25  confidential information on a "need to know basis." Each financial advisor must use a confidential

26  password to gain access to Merrill Lynch's computer system containing confidential client

27  information

28     On August 10, 2001, Clark resigned from Merrill Lynch in order to accept a position with

2

1    UBS PaineWebber Inc ("PaineWebber") in Indian Wells, California. In a letter addressed to

2    Lovett, the resident manager of Merrill Lynch's Palm Springs office, Clark requested that Lovett

3    inform any customers who asked for Clark of his new business number  He also stated that he was

4    leaving all "Merrill Lynch property entrusted to me, including customer files, account documents,

5    and related documents, in my office file drawers "

6        Since Clark's resignation, Merrill Lynch customers reported to Lovett that they had

7    received a mailing from Paine Webber announcing that Clark had joined Paine Webber  Included

8    with the mailing were account transfer forms, which were filled out with the customer's name and

9    Merrill Lynch account number  The letter from PaineWebber, signed by Lawrence Zech,

10   PaineWebber's branch manager, reads as follows.

11

12      Andrew Clark has joined the firm of UBS PaineWebber, and has asked me to
      announce this to the people whom he considers to be especially important clients.

13      A Financial Advisor does not make the change from one firm to another without a
14      great deal of thought and soul searching. I am particularly proud, therefore, that
      Andrew has chosen UBS PaineWebber, a firm having the high level of operational
      and technical expertise he requires for his clients.

15

16      An investment account with UBS PaineWebber can be of tremendous benefit to you
      as an investor  As you may know, UBS PaineWebber is one of the largest
17      investment banking and brokerage firms in the world, with over a century of
      experience in servicing the needs of both large and small investors.

18      Once again, I am very proud of the fact that Andrew has decided to join UBS
19      PaineWebber  I know that he is looking forward to continuing his investment
      relationship with you. If I can be of service to you in any way, please do not
      hesitate to call at 800-669-1775.

20

21       Many of the accounts Clark serviced while at Merrill Lynch were of relatives and friends

22   They include people with whom he socializes and with whom he had social or business

23   relationships pre-existing his employment with Merrill Lynch  Because of the social and family

24   relationships he has with his clients, he maintains that he knows their names, addresses, and

25   telephone numbers independent of any information he received from Merrill Lynch

26       Merrill Lynch filed a complaint against Clark alleging claims for 1) breach of contract; 2)

27   misappropriation of trade secrets; 3) breach of fiduciary duty; 4) unfair competition; and 5)

28   interference with contract.

3

08-21-01  16:54    From-LUCE FORWARD HAMILTON AND SCRIPPS LLP *  2136927731    T-645  P.05/15  F-781
SDC·                            8/21/01 1:48  PAGE  5/15    RightFAX

## II.

## EVIDENTIARY OBJECTIONS

Clark has raised numerous evidentiary objections to the declaration and supplemental declaration of Lovett offered in support of Merrill Lynch's application for a TRO  Because of the urgency involved and the limited time that TRO's remain in effect, declarations and evidence supporting the application need not conform to the standards for a summary judgment motion or to the Federal Rules of Evidence  See Flynt Distributing Co., Inc. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984), 11A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Fed. Prac. & Proc. § 2949 (2d ed. 1995). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." Flynt, 734 F.2d at 1394. It is up to the district court to determine the weight to be given such evidence, taking into consideration the declarant's competency, personal knowledge and credibility  See Republic of the Philippines v. Marcos, 862 F.2d 1355, 1363 (9th Cir 1988) ("It is within the discretion of the district court to accept this hearsay for purposes of deciding whether to issue the preliminary injunction "), Bracco v. Lackner, 462 F.Supp. 436, 442 n.3 (N D.Cal. 1978)).

With this standard in mind, the court overrules Clark's objections to the following paragraphs or portions thereof of Lovett's declaration·  3, 4, 5, 6 8, 9, 10 at p  4 26 through p. 5.15, 11, 12, 13, 14, 15, 16, and 18  The court sustains the objections to the following paragraphs or portions thereof·  7, 10 at p  5-15 -20, 17, and 19

The court overrules all the objections to portions of Lovett's supplemental declaration

## III.

## ANALYSIS

The Court has inherent authority to grant preliminary injunctive relief in the exercise of its equitable powers.  See In re Estate of Ferdinand Marcos, Human Rights Litig., 25 F 3d 1467, 1476 (9th Cir. 1994) ("It is unquestionable that it is within the district court's authority to issue a preliminary injunction where final equitable relief is sought.").  A party seeking a TRO must satisfy the same requirements that must be satisfied by parties seeking preliminary injunctions

4

08-21-07  16:54    From-LUCE FORWARD HAMILTON AND SCRIPPS LLP    2138627731    T-645  P.06/15  F-781
IC                  8/21/01 1:48  PAGE  8/15    RIGHTFAX

1  Traditionally, such parties must show either (1) a combination of probable success on the merits
2  and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of
3  hardships tips sharply in the moving party's favor  See Miss World (UK) Ltd. v. Mrs. America
4  Pageants, Inc., 856 F 2d 1445, 1448 (9th Cir 1988), Rodeo Collection, Ltd  v. West Seventh, 812
5  F.2d 1215, 1217 (9th Cir 1987)  "These are not two distinct tests, but rather the opposite ends of a
6  single 'continuum in which the required showing of harm varies inversely with the required
7  showing of meritoriousness.'"  Miss World, 856 F.2d at 1448 (quoting Rodeo Collection, 812 F 2d
8  at 1217).  However, in any situation, the Court must find that there is at least a fair chance of
9  success on the merits, see Johnson v. California State Bd  of Accountancy, 72 F 3d 1427, 1430 (9th
10 Cir. 1995), and that there is some threat of an immediate irreparable injury, even if that injury is not
11 of great magnitude.  See Big Country Foods, Inc  v  Board of Ed  of the Anchorage School Dist.,
12 868 F.2d 1085, 1088 (9th Cir 1989)

13 A.    This Court is a Proper Forum in Which to Request a TRO

14        As a threshold matter, Clark opposes Merrill Lynch's TRO application on the basis that
15 Merrill Lynch must seek such injunctive relief from NASD arbitrators. Clark recognizes that
16 courts have authority to issue preliminary injunctive relief pending arbitration, but contends that
17 before a court can issue such relief, it must first make a finding that the arbitration process would
18 be rendered a "hollow formality" in the absence of preliminary injunctive relief  See Merrill
19 Lynch, Pierce, Fenner & Smith v. Bradley, 756 F 2d 1048, 1053 (4th Cir. 1985) ("[A] district court
20 has the discretion to grant a preliminary injunction to preserve the status quo pending the
21 arbitration of the parties' dispute if the enjoined conduct would render that process a 'hollow
22 formality '")  The arbitration process would be rendered a hollow formality if the arbitral award
23 could not return the parties to the status quo  Id. at 1053-54  In this case, Clark contends, the
24 arbitral award would not be a formality in the absence of this court issuing a TRO because the
25 NASD Code permits an arbitrator to issue immediate injunctive orders. If a party applies for
26 immediate injunctive relief through the NASD arbitration process, a hearing must be held no
27 sooner than one and no later than three days after the application is received by the opposing party.
28 See NASD Code § 10335(d)(1)(A) ("Section 10335(d)(1)(A")

08-21-01  16:54.   From-LUCE FORWARD HAMILTON AND SCRIPPS LLP   2138827731   T-645  P.07/15  F-781
SDC                        8/21/01 1:48  PAGE  7/15   RightFAX

1    Clark interprets PMS Distributing Co., Inc. v. Huber & Suhner, A.G., 863 F 2d 639 (9th

2   Cir. 1988) as authorizing district courts to award preliminary injunctive relief only upon finding

3   that injunctive relief will "preserve the status quo pending arbitration and, ipso facto, the

4   meaningfulness of the arbitration process." Id. at 641-42 (quoting Teradyne, Inc. v Mostek Corp.,

5   797 F.2d 43, 51 (1st Cir 1986)) The court does not read either PMS Distributing or Teradyne as

6   requiring that the court first must find that Merrill Lynch could not obtain a TRO through the

7   arbitration process before it could issue a TRO In Teradyne, the First Circuit held "that a district

8   court can grant injunctive relief in an arbitrable dispute pending arbitration, provided the

9   prerequisites for injunctive relief are satisfied." 797 F.2d at 51. Similarly, the Ninth Circuit held in

10   PMS Distributing, "The fact that a dispute is arbitrable and that the court so orders under Section 4

11   of the Arbitration Act, 9 U.S C. § 4, does not strip it of authority to grant a writ of possession

12   pending the outcome of the arbitration so long as the criteria for such a writ are met." A TRO and

13   a preliminary injunction are forms of discretionary relief. See Continental Airlines, Inc v. Intra

14   Brokers, Inc., 24 F 3d 1099, 1105 (9th Cir. 1994). Whether issuing such relief would preserve the

15   meaningfulness of the arbitration process is a factor for the court to consider in exercising its

16   discretion  PMS Distributing does not mandate that the court find that a subsequent arbitration

17   award would be rendered meaningless unless the court issued preliminary injunctive relief

18    Clark is correct in noting that Merrill Lynch could have sought the relief it seeks here from

19   an NASD arbitrator  This fact distinguishes this case from Bradley, Teradyne, and PMS

20   Distributing, where there was no indication that the arbitrators were authorized to award

21   preliminary injunctive relief. However, the consideration underlying all of those cases was respect

22   for the parties' agreement to arbitrate  In the instant case, the issuance of a TRO by this court

23   would not be contrary to the parties' arbitration agreement. Clark acknowledged in the Financial

24   Consultant Agreement that Merrill Lynch could seek a TRO or preliminary injunction from a

25   district court [2]  In addition, while Section 10335(d)(1)(A) authorizes arbitrators to award immediate

26

27    [2] The relevant paragraphs of the Financial Consultant Agreement provide:

28   4    In the event I breach any of the covenants of paragraphs 1, 2, or 3, I agree that Merrill
         Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer

                                             6

·6-21-01   15:55  ·  From-LUCE FORWARD HAMILTON AND SCRIPPS LLP·    2138927731    ·    T-545   P.08/15   F-781
C    ·    ·    ·    8/21/01 1:48   PAGE   8/15    NightFAX

1    injunctive relief, it also recognizes that parties may seek a TRO from "a court of competent

2    jurisdiction." Merrill Lynch's application for a TRO from this court is consistent with the parties'

3    agreement to arbitrate the merits of their dispute and this court is a proper forum for consideration

4    of such application.

5    **B.    Likelihood of Success on the Merits**

6         Having concluded that this court is a proper forum in which Merrill Lynch can seek a TRO,

7    the court turns to the merits of its application. Merrill Lynch contends that it has demonstrated a

8    reasonable likelihood of success on its claim of misappropriation of trade secrets and breach of

9    contract

10        California has adopted the Uniform Trade Secrets Act ("UTSA"). See Cal. Civil Code §§

11   3426-3426 10  The UTSA defines a trade secret as.

12        information, including a formula, pattern, compilation, program, device, method,
         technique, or process, that.
13        (1) Derives independent economic value, actual or potential, from not being
         generally known to the public or to other persons who can obtain economic value
14        from its disclosure or use; and
         (2) Is the subject of efforts that are reasonable under the circumstances to maintain
15        its secrecy.

16        Cal. Civil Code § 3426.1(d).

17        Clark contends that the information he allegedly misappropriated consisted simply of

18   names and phone numbers of clients that he knew independent of his employment with Merrill

19

20 _____

         immediate and irreparable harm and that money damages will not be adequate to
21       compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I
         CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A
22       PRELIMINARY or PERMANENT INJUNCTION ordering . .

23   5   For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on,
         the United States District Court or the State Court which has original jurisdiction for
24       judicial district or county in which I last worked for Merrill Lynch

25   6.  If after issuance of a TEMPORARY RESTRAINING ORDER or PRELIMINARY or
         PERMANENT INJUNCTION, the parties voluntarily agree, or are ordered to arbitrate a
26       dispute arising out of this Agreement, each party agrees and demands that any such
         arbitration be conducted in strict compliance with the applicable written Rules of
27       Arbitration, as published, amended, effective, and in force at the time of my termination
         The parties further agree that any Order of the Court shall stay in full force and effect until
28       a Panel of Arbitrators can be properly constituted in accordance with the above referenced
         written Rules of Arbitration and until said Panel renders a full and final decision.

7

1  Lynch; as such, the names and phone numbers of these customers cannot be considered trade

2  secrets. He also notes that the clients phone numbers are available in the phone book. The fact that

3  Clark may have known many of his clients even if they had not been Merrill Lynch customers and

4  their phone numbers are available in a phone book is not the test for trade secret protection. A

5  customer list is entitled to trade secret protection if it has "economic value because its disclosure

6  would allow a competitor to divert its sales efforts to those customers who have already shown a

7  willingness to use a unique type of service or product as opposed to a list of people who only might

8  be interested." Morlife v. Perry, 56 Cal.App.4th 1514, 1522, 66 Cal.Rptr.2d 731, 736 (1997). The

9  value of Merrill Lynch's customer list is not that it includes phone numbers, but that it is a list of

10  names and phone numbers out of thousands listed in a phone book who have shown their

11  willingness to use unique services that Merrill Lynch and its competitors offer. See MAI Systems

12  v. Peak Computer, Inc, 991 F.2d 511, 521 (9th Cir. 1993), Morlife v. Perry, 56 Cal.App 4th at

13  1522, 66 Cal.Rptr. at 736. The customer list has independent economic value because it saves

14  competitors the time and expense that Merrill Lynch invested in identifying individuals who desire

15  investment services. See MAI, 991 F.2d at 521; Morlife, 56 Cal.App.4th at 1522, 66 Cal.Rptr. at

16  736

17      In addition to showing that the customer list has independent economic value, Merrill

18  Lynch has also shown that it takes steps "reasonable under the circumstances to maintain" the

19  secrecy of its customer list. Cal. Civil Code § 3426 1(d)(2). It requires all financial advisors to

20  agree not to disclose any information regarding customer accounts to third parties. Financial

21  advisors are provided with confidential customer information on a need to know basis. In addition,

22  computer access to customer information is password protected.

23      The court finds that Merrill Lynch's customer list has independent economic value and that

24  Merrill Lynch took reasonable steps to protect the secrecy of its customer lists. Therefore the court

25  concludes that the customer list is entitled to trade secret protection.

26      Clark argues it would be unfair to award Merrill Lynch trade secret protection in the names

27  and phone numbers of Clark's family and friends who were customers of Merrill Lynch,

28  particularly given that he knew some of these customers prior to his employment with Merrill

8