1    Lynch. Clark's position is undermined by the Financial Consultant Agreement, in which he agreed

2    that "names, addresses, phone numbers, and financial information of any account, customer, client,

3    customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of

4    Merrill Lynch." Clark knew at the start of his employment that customer information was the

5    property of Merrill Lynch

6       Even if Merrill Lynch's customer list is entitled to trade secret protection, Clark contends

7    he did not misappropriate any trade secrets. The UTSA defines misappropriation as:

8       (1) Acquisition of a trade secret of another by a person who knows or has reason to
        know that the trade secret was acquired by improper means; or

9       (2) Disclosure or use of a trade secret of another without express or implied consent
        by a person who:

10      (A) Used improper means to acquire knowledge of the trade secret; or
        (B) At the time of disclosure or use, knew or had reason to know that his or her

11      knowledge of the trade secret was:
        (i) Derived from or through a person who had utilized improper means to acquire it,

12      (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or
        limit its use; or

13      (iii) Derived from or through a person who owed a duty to the person seeking relief
        to maintain its secrecy or limit its use; or

14      (C) Before a material change of his or her position, knew or had reason to know that
        it was a trade secret and that knowledge of it had been acquired by accident or

15      mistake

16      Cal Civil Code § 3426(b).

17      Soliciting customers by using information from a protected customer list constitutes

18    misappropriation MAI, 991 F.2d at 521. "Merely informing customers of ones former employer

19    of a change of employment, without more, is not solicitation." Aetna Bldg. Maintenance Co. v.

20    West, 39 Cal.2d 198, 204 (1952). Employees are entitled to use trade secret information such as

21    names and addresses of customers to announce the employee's association with a new firm. Moss,

22    Adams & Co v Shilling, 179 Cal.App.3d 124, 126, 246 P.2d 11, 15 (1986).

23       Clark asserts that he did not misappropriate trade secrets because he did no more than

24    announce a change in employment. Clark's conduct here goes well beyond announcing a change

25    of employment and crosses over into solicitation. The letter PaineWebber sent informing Clark's

26    clients of his employment change did more than merely announce that change. It informed the

27    client that "account with UBS PaineWebber can be of tremendous benefit to you as an investor"

28    and noted that PaineWebber has been in business for over 100 years. The letter concluded by

09-21-01  16:56   From-LUCE FORWARD HAMILTON AND SCRIPPS LLP   2138927731     T-645  P.11/15  F-781
JDC                  8/21/01 1:48  PAGE 11/15   RIGHTFAX

1  stating that Clark "is looking forward to continuing his investment relationship with you." To

2  facilitate this continued relationship, PaineWebber enclosed pre-completed account transfer forms,

3  which included that client's name, and most importantly, the client's Merrill Lynch account

4  number  Contrary to Clark's assertion that he merely used names and phone numbers of friends

5  and relatives that he knew independent of his association with Merrill Lynch, he also retained

6  Merrill Lynch account numbers, which he could not have known but for his employment with

7  Merrill Lynch  The only conclusion to be drawn from PaineWebber's letter and enclosed account

8  transfer forms is that Clark disclosed the account numbers to PaineWebber and used them to solicit

9  business for PaineWebber, in violation of Merrill Lynch's trade secret rights  Accordingly, the

10  court concludes that Merrill Lynch has demonstrated a reasonable likelihood of success on the

11  merits with respect to its misappropriation of trade secrets claim

12  C.    Irreparable Harm

13        The court also finds that Merrill Lynch has demonstrated the possibility of irreparable

14  harm. While Clark is probably correct that Merrill Lynch's primary concern is recovering any lost

15  commission income, Clark has offered no way to calculate the commissions Merrill Lynch would

16  lose if Clark is not enjoined from soliciting Merrill Lynch customers.  See Merrill Lynch, Pierce,

17  Fenner & Smith, Inc v. Stidham, 658 F.2d 1098, 1102 n.8 (5th Cir 1981) ("Were defendant

18  permitted by the law to exploit the clientele of their former employers, every investment that

19  reasonably flowed from the exploitation should be included in the damages award  How such a

20  figure could be arrived at escapes us."), Merrill Lynch, Pierce, Fenner, & Smith, Inc. v

21  Hagerty, 808 F.Supp. 1555, 1559-60 (S.D. Fla. 1992) (discussing difficulty in calculating damages

22  from financial advisor's use of customer list to solicit former employer's customers)  In any event,

23  Clark's breach of confidentiality constitutes irreparable harm.  See Merrill Lynch Pierce, Fenner &

24  Smith v. Kramer, 816 F.Supp. 1242, 1247 (N.D. Ohio 1992) ("irreparable and immeasurable harm

25  lies in the fact that Merrill Lynch clients, when they discover that their financial information,

26  market transactions, and investment assets which they presumed were held in confident have been

27  disclosed, will lose trust and confidence in Merrill Lynch").

28        Clark contends that the harm he will suffer in not being able to earn a living outweighs any

10

1    possible harm Merrill Lynch will suffer in the absence of a TRO. But any harm that Clark will

2    suffer in not being able to reap the benefits of his solicitation efforts is self-inflicted. He was aware

3    of the non-solicitation clause in the Financial Consultant Agreement and of the fact that Merrill

4    Lynch holds a proprietary interest in customer information. If Clark had abided by the terms of his

5    agreement and sent a letter announcing his move to PaineWebber instead of a solicitation letter, he

6    would have been free accept any account transfers and Merrill Lynch would have had no basis to

7    seek a TRO.

8            Clark maintains that the court should not issue a TRO in Merrill Lynch's favor because of

9    its unclean hands. He claims that Merrill Lynch has not paid him all of his commissions. The

10   unclean hands defense arises from the equitable maxim, "He who comes into Equity must come

11   with clean hands." Kendall-Jackson Winery, Ltd. v. Superior Court, 76 Cal App 4th 970, 978, 90

12   Cal.Rptr. 2d 743, 748 (2000). The defense applies in legal as well as equitable actions. Id. at 978,

13   90 Cal Rptr 2d at 749. The plaintiff's misconduct must relate directly to the transaction at issue.

14   Camp v. Jeffer, Mangels, Butler & Marmaro, 35 Cal.App.4th 620, 638, 41 Cal Rptr 2d 329, 638-39

15   (1995). A defendant cannot successfully assert the defense if the plaintiff's misdeeds relate to

16   earlier dealings between the parties and not the current transaction. Fibreboard Paper Products

17   Corp. v. East Bay Union of Machinists, 227 Cal App 2d 675, 728-29, 39 Cal Rptr 64, 97 (1964).

18   Clark's assertion that he has not been fully paid is unrelated to Merrill Lynch's trade secrets

19   misappropriation claim. Therefore, the unclean hands defense does not apply.

20           Finally, Clark raises concerns that a TRO will not serve the public interest because it will

21   prevent customers who may want Clark to continue to service their accounts from transferring their

22   accounts to Clark at PaineWebber. The countervailing concern is that Clark should not benefit

23   from misappropriating trade secrets and breaching confidentiality by being able to accept account

24   transfers from clients of Merrill Lynch whom he improperly solicited. The terms of the TRO

25   Merrill Lynch proposes do not adequately balance these interests. Therefore, the court will modify

26   the terms of the proposed TRO to permit Clark to accept account transfers from his former clients

27   at Merrill Lynch subject to the following conditions. If clients use already completed account

28   transfer forms to request account transfers, Clark must (1) inform the clients in writing that this

11

1    court preliminarily determined that the use of the already completed forms was a form of unlawful

2    solicitation, and (2) advise the clients that if they still want to transfer their accounts, they must

3    complete new account transfer forms and supply information regarding their Merrill Lynch

4    accounts

5                                          IV.

6                                     **DISPOSITION**

7    ACCORDINGLY, IT IS ORDERED THAT

8    1) Defendant is enjoined and restrained, directly and indirectly, and whether alone or in concert

9    with others, including any agent representative, officer, or employee of Defendant's current

10   employer, PaineWebber, until hearing and thereafter and until further Order of this Court, from.

11           (a) soliciting any business from, or initiating any further contact or communication with any

12   client of Merrill Lynch whom Defendant served or whose name became known to Defendant while

13   in the employ of Merrill Lynch including for the purpose of inviting, encouraging, or requesting the

14   transfer of any accounts from Merrill Lynch to Clark's new employer (excluding members of

15   Defendant's family and relatives);

16           (b) accepting any business or account transfers from any clients whom Defendant, or any

17   one acting on Defendant's behalf or in concert with Defendant, has solicited at any time in the past

18   for the purpose of doing business with Defendant's new employer, PaineWebber (excluding

19   member of Defendant's family and relatives) if those clients request account transfers using already

20   completed account transfer forms unless Defendant·

21           1) informs the clients in writing that this court preliminarily determined that the use of

22           already completed account transfer forms was a form of unlawful solicitation, and

23           (2) advises the clients that if they still want to transfer their accounts, they must complete

24           new account transfer forms and supply information regarding their Merrill Lynch accounts,

25           and

26           (c) accepting any business , including account transfers, from any customer whose records

27   or information Defendant used in violation of his contractual and trade secret obligations to Merrill

28   Lynch, including Defendant's Financial Consultant Employment Agreement and Restrictive

                                           12

1  Covenants, and any customer whom Defendant solicited through the use of any customer

2  information obtained by Defendant while in the employ of Merrill Lynch (excluding members of

3  Defendant's family and relatives) if those customers request account transfers using already

4  completed account transfer forms unless Defendant:

5        1) informs the customers in writing that this court preliminarily determined that the use of

6        already completed account transfer forms was a form of unlawful solicitation, and

7        (2) advises the customers that if they still want to transfer their accounts, they must

8        complete new account transfer forms and supply information regarding their Merrill Lynch

9        accounts; and

10        (d) using, disclosing, or transmitting for any purpose, including the solicitation or

11  acceptance of business or account transfers, the information contained in the records of Merrill

12  Lynch; and that all original records and copies and/or other reproductions thereof, in whatever

13  form, be returned to Merrill Lynch's Palm Springs, California office immediately.

14  2) IT IS FURTHER ORDERED that Defendant, and anyone acting in concert or participation with

15  Defendant, including Defendant's counsel and any agent, employee, officer or representative of

16  Defendant's current employer, PaineWebber, shall return to Merrill Lynch's Palm Springs,

17  California office any and all records or information pertaining to Merrill Lynch's customers

18  whether in original, copied, computerized, handwritten or any other form, and purge any such

19  information from his possession, custody, or control, within 24 hours of notice to Defendant or his

20  counsel of the terms of this Order provided, however, that any information so purged shall be

21  printed prior to purging and be returned to Merrill Lynch pursuant to this paragraph

22  IT IS FURTHER ORDERED AS FOLLOWS:

23  1) Pending a preliminary injunction hearing before this court, and pursuant to the requirement of

24  section 3 and 4 of the Federal Arbitration Act, 9 U.S.C. § 3-4, the parties are directed to commence

25  and to proceed with arbitration in accordance with Rule 10335(g) of the National Association of

26  Securities Dealers Code of Arbitration Procedure

27  2) Defendant shall show cause before this court on August 30, 2001 at 10.00 a.m., or as soon

28  thereafter as counsel may be heard, why a preliminary injunction should not be ordered according

13

1   to the terms and conditions set forth above

2   3) Defendant shall serve and file his opposition no later than August 27, 2001 at noon

3   4) Plaintiff shall file and serve its reply no later than August 29, 2001 at noon.

4   5) The parties are granted leave to take expedited deposition discovery prior to the preliminary

5   injunction hearing referred to hereinabove.

6   6) Plaintiff shall file an undertaking in the sum of $ 10,000.00 with the Clerk of this Court no later

7   than August 23, 2001  This Order shall not be effective until the undertaking is filed

8          This Order shall remain in full force and effect until such time as this court specifically

9   orders otherwise

10

11      _8/20/01_                    Robert & Timlin
12          DATE                    ROBERT J. TIMLIN, DISTRICT COURT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14



FROM DEPT 61          TO:          TMS&P          MAY 18, 1996     9:55AM   P.01

1  RUBIN & ASSOCIATES, P.C.
   Michael J. Fortunato
2  Mack Harbison
   10 South Leopard Road
3  MCS Building, Suite 202
   Paoli, Pennsylvania 19301-1534
4  Telephone: (610) 408-2005

5  TROOP MEISINGER STEUBER & PASICH, LLP
   Anthony J. Oncidi (State Bar No. 118135)
6  Elizabeth A. Casey (State Bar No. 137281)
   10940 Wilshire Boulevard, Suite 800
7  Los Angeles, California 90024-3902
   Telephone: (310) 824-7000

8
   Attorneys for Plaintiff
   MERRILL LYNCH, PIERCE, FENNER & SMITH INC.
10

11 MAR 19 1996     SUPERIOR COURT OF THE STATE OF CALIFORNIA

                   FOR THE COUNTY OF ORANGE

13

14 MERRILL LYNCH, PIERCE, FENNER &  )  CASE NO. 759911
   SMITH INC., a Delaware corporation,  )
15                                    )  [ASSIGNED FOR ALL PURPOSES TO:
              Plaintiff,              )  HON. ROBERT J. POLIS
16                                    )  DEPARTMENT 61]
         vs.                          )
17                                    )  [PROPOSED] PRELIMINARY
   THOMAS M. NICHOLSON, an individual )  INJUNCTION
18                                    )
              Defendant.              )  Date: March 8, 1996
19                                    )  Time: 9:30 a.m.
                                      )  Dept: 61
20                                    )
                                      )  Action Filed: February 21, 1996
21                                    )  Trial Date:   None Set

22

23

24

25

26

27

28

FILED
ORANGE COUNTY SUPERIOR COURT
MAY 1 0 1996
ALAN SLATER, Executive Officer/Clerk
BY P. DALE
DEPUTY

DRAFT
RECEIVED
AUTHORIZED
MAR 19 1996
A. SLATER, Executive Officer/Clerk
DALE DEPUTY

1    Upon reviewing all of the files and records in this action, including the declarations and

2    memoranda filed by counsel, on application of plaintiff Merrill Lynch, Pierce, Fenner & Smith

3    Inc. ("Merrill Lynch") and having concluded that Merrill Lynch, under section 47 of the

4    National Association of Securities Dealers Code of Arbitration Procedure, has the express right

5    to seek preliminary injunctive relief from a court of competent jurisdiction pending an arbitration

6    hearing before a full panel of duly-appointed arbitrators:

7        IT IS HEREBY ORDERED that:

8        1.    Defendant Thomas M. Nicholson ("Defendant") and all those acting in active

9    concert or participation with him, including, but not limited to, any officer, agent,

10   representative, or employee of Defendant's current employer, A.G. Edwards & Son, Inc. ("A.G.

11   Edwards"), are, and have been since February 21, 1996, enjoined from soliciting any business

12   from any client of Merrill Lynch (excluding Defendant's immediate family) whom Defendant

13   served or whose name became known to Defendant while he was in the employ of Merrill Lynch

14   and are, and have been since February 21, 1996, enjoined from accepting any business or

15   account transfers from any of said customers (excluding Defendant's immediate family) whom

16   Defendant has solicited in the past for the purpose of doing business with A.G. Edwards;

17       2.    Defendant and all those acting in active concert or participation with him,

18   including, but not limited to, any officer, agent, representative, or employee of A.G. Edwards,

19   are, and have been since February 21, 1996, enjoined from using, disclosing, or transmitting for

20   any purpose, including solicitation of said customers, the information contained in the records of

21   Merrill Lynch, including, but not limited to, the names, addresses, and financial information of

22   the clients listed in Exhibit "C" to Merrill Lynch's Complaint; and

23       3.    Defendant and all those acting in active concert or participation with him,

24   including, but not limited to, any officer, agent, representative, or employee of A.G. Edwards,

25   are, and have been since February 21, 1996, ordered to return to Merrill Lynch all of its

26   original records and copies and/or transcriptions and/or computerized transcriptions thereof in

27   any such person's or entity's possession, custody, or control.

28

AKP\MERRILL\NICHOLSON\PRELIM.INJ
031996 10:00
Keesler Kimmerer Belmeda & Palski, LLP

2

4.    Attached hereto and incorporated herein by this reference are the Court's March 7, 1996 and March 15, 1996 Orders.

5.    Merrill Lynch shall post a preliminary injunction bond in the amount of $10,000.00 no later than _5-13_, 1996. _4:30pm_.

Dated: ___ MAY 10 1996 ___, 1996.


                                    ROBERT J. POLIS
                                    JUDGE OF THE SUPERIOR COURT

A:\OW\MERRILL\INJCTIO.MOV\INJUN.INJ
031996 18:00
Treger Heisinger Argretta & Fumco, LLP

3

## N.A.S.D. AWARD

## NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.

In the matter of the Arbitration Between

Name of Claimant

Merrill Lynch, Pierce, Fenner & Smith, Inc.

NASD Arbitration
No. 96-00774

Name of Respondents

A.G. Edwards & Sons, Inc. and Thomas M. Nicholson

## REPRESENTATION

For Claimant:
Michael J. Fortunato, Esq.
Rubin & Associates, P.C.
Paoli, Pennsylvania

For Respondent
A.G. Edwards & Sons, Inc.:
Jeff Jamieson, Esq.
A.G. Edwards & Sons, Inc.
St. Louis, Missouri

For Respondent
Thomas M. Nicholson:
Peter A. Goldenring, Esq.
Goldenring & Prosser
Ventura, California

## CASE INFORMATION

Statement of Claim filed:    February 22, 1996

Claimant's Submission Agreement signed:  February 21, 1996

Joint Statement of Answer filed by Respondents:   April 16, 1996

## HEARING INFORMATION

Pre-Hearing Conference Dates / Sessions:    May 15, 1996 (1 session)
                                            June 11, 1996 (1 session)

Hearing Dates / Sessions:                   June 13, 1996 (2 sessions)
                                            June 14, 1996 (2 sessions)
                                            June 18, 1996 (2 sessions)
                                            June 19, 1996 (2 sessions)
                                            June 20, 1996 (2 sessions)

Hearing Location:                           Los Angeles, California

## CASE SUMMARY

Claimant alleged that Respondent Nicholson violated the terms and conditions of his employment contract with Claimant. Claimant further alleged that Respondents misappropriated and converted Claimant's trade secrets and business property, breached their fiduciary duty, and engaged in unfair competition.

Respondents denied all of Claimant's allegations.

## RELIEF REQUESTED

Claimant sought a permanent injunction order enjoining Respondents from soliciting any business from Respondent Nicholson's former clients, and from using, disclosing, or transmitting any information contained in Claimant's business records. Claimant also requested compensatory damages in an amount to be determined at the arbitration hearing.

Respondent asked that the claim be dismissed in its entirety, and that the NASD sanction the Claimant for making conflicting and inconsistent representations to the NASD and the Superior Court of the State of California for the County of Orange.

## OTHER ISSUES CONSIDERED AND DECIDED

The parties have agreed that the Award in this matter may be executed in either counterpart copies or that a handwritten, signed Award may be entered. In either case, the parties have agreed to receive conformed copies of the Award while the original remains on file with the NASD.

*Page 2 of 4*                                                    *96-00774*

## AWARD

After considering the pleadings, the testimony and the evidence presented at the hearing, the undersigned arbitrators have decided in full and final resolution of the issues submitted for determination as follows:

1. Claimant is awarded permanent injunctive relief against Respondents. The permanent injunction order shall incorporate the present terms of the preliminary injunction, and will run for a period of one (1) year from the date of Respondent Nicholson's termination, February 16, 1996.

2. Respondents A.G. Edwards & Sons, Inc. and Thomas M. Nicholson are jointly and severally liable and shall pay Claimant the sum of $270,000.00 in damages.

3. Respondents A.G. Edwards & Sons, Inc. and Thomas M. Nicholson are jointly and severally liable for forum fees.

4. The parties shall bear their respective costs, including attorneys' fees.

## FORUM FEES

Pursuant to Section 43(c) of the Code of Arbitration Procedure, the following forum fees are assessed against the Respondents, jointly and severally:

| | | |
|---|---|---|
| Two Pre-Hearing Conferences @ $300.00 / Session | = | $600.00 |
| Ten Hearing Sessions @ $1,000.00 / Session | = | $10,000.00 |
| Total Forum Fees Assessed | = | $10,600.00 |
| Respondents A.G. Edwards & Sons, Inc. and Thomas M. Nicholson Balance Due | = | $10,600.00 |

Fees are payable to the National Association of Securities Dealers, Inc.

96-00774

## ARBITRATORS

| Name | | Public / Industry |
|------|---|---|
| Louis R. Eglash, Esq. | | Public Arbitrator |
| Gwendolyn J. Bandt | | Industry Arbitrator |
| Douglas J. Rovens, Esq. | | Public Arbitrator |

Concurring Arbitrators' Signatures

_____

Louis R. Eglash, Esq.

_____

Gwendolyn J. Bandt

_____

Douglas J. Rovens, Esq.

Date of Decision: _____

96-00774

## ARBITRATORS

| Name | Public / Industry |
| --- | --- |
| Louis R. Eglash, Esq. | Public Arbitrator |
| Gwendolyn J. Bandt | Industry Arbitrator |
| Douglas J. Rovens, Esq. | Public Arbitrator |

Concurring Arbitrators' Signatures

Louis R. Eglash, Esq.

Gwendolyn J. Bandt

Douglas J. Rovens, Esq.

Date of Decision: _____

96-00774

## ARBITRATORS

| Name | Public / Industry |
|---|---|
| Louis R. Eglash, Esq. | Public Arbitrator |
| Gwendolyn J. Bandt | Industry Arbitrator |
| Douglas J. Rovens, Esq. | Public Arbitrator |

<u>Concurring Arbitrators' Signatures</u>

_____

Louis R. Eglash, Esq.

_____

Gwendolyn J. Bandt

_____

Douglas J. Rovens, Esq.

Date of Decision: _____



Case 3:07-cv-03336-MMC    Document 4-4    Filed 06/26/2007    Page 18 of 20

NASD | This section is part of a frameset. This page contains the main content of the fram...    Page 1 of 3



Location: NASD > Manual > Rules of the Association > Procedural Rules (8000–14000) > 13000. NASD Code of Arbitration Procedure for Industry Disputes > Part VIII Simplified Arbitration; Default Proceedings; Statutory Employment Discrimination Claims; and Injunctive Relief > 13804. Temporary Injunctive Orders; Requests for Permanent Injunctive Relief

<< Previous                                                                                                                  Next >>

## 13804. Temporary Injunctive Orders; Requests for Permanent Injunctive Relief

NASD Notices to Members (1 link)

The Industry Code will apply to claims filed on or after April 16, 2007. In addition, the list selection provisions of the Industry Code will apply to previously filed claims in which a list of arbitrators must be generated after April 16, 2007; in these cases, however, the claim will continue to be governed by the remaining provisions of the old Code unless all parties agree to proceed under the new Code. Contact your case administrator for details.

### (a) Temporary Injunctive Orders

(1) In industry or clearing disputes required to be submitted to arbitration under the Code, parties may seek a temporary injunctive order from a court of competent jurisdiction. Parties to a pending arbitration may seek a temporary injunctive order from a court of competent jurisdiction even if another party has already filed a claim arising from the same dispute in arbitration pursuant to this paragraph, provided that an arbitration hearing on a request for permanent injunctive relief pursuant to paragraph (b) of this rule has not yet begun.

(2) A party seeking a temporary injunctive order from a court with respect to an industry or clearing dispute required to be submitted to arbitration under the Code must, at the same time, file with the Director a statement of claim requesting permanent injunctive and all other relief with respect to the same dispute in the manner specified under the Code. The party seeking temporary injunctive relief must also serve the statement of claim requesting permanent injunctive and all other relief on all other parties in the same manner and at the same time as the statement of claim is filed with the Director.

(3) Filings and service under this rule must be made by facsimile, overnight delivery service or messenger. Service must be made on all parties at the same time and in the same manner, unless the parties agree otherwise. A party obtaining a court-issued temporary injunctive order must notify the Director and the other parties of the issuance of the order within one business day.

### (b) Hearing on Request for Permanent Injunctive Relief

(1) Scheduling of Hearing

If a court issues a temporary injunctive order, an arbitration hearing on the request for permanent injunctive relief will begin within 15 days of the date the court issues the temporary injunctive order. If the 15th day falls on a Saturday, Sunday, or NASD holiday, the 15-day period shall expire on the next business day. Unless the parties agree otherwise, a hearing lasting more than one day will be held on consecutive days when reasonably possible. The Director will provide to all parties notice of the date, time and place of the hearing at least three days prior to the beginning of the hearing.

(2) Composition of Arbitration Panel

The hearing on the request for permanent injunctive relief will be heard by a panel of three arbitrators. The composition of the panel will be determined in accordance with Rule 13402.

(3) Selection of Arbitrators and Chairperson

(A)(i) In cases in which all of the members of the panel are non-public, the Director will generate and provide to the parties a list of seven arbitrators from NASD's roster of non-public arbitrators. The Director will send to the parties the employment history for the past 10 years for each listed arbitrator and other background information. At least three of the arbitrators listed shall be lawyers with experience litigating cases involving injunctive relief.

(ii) Each party may exercise one strike to the arbitrators on the list. Within three days of receiving the list, each party shall inform the Director which arbitrator, if any, it wishes to strike, and shall rank the

Case 3:07-cv-03336-MMC     Document 4-4     Filed 06/26/2007     Page 19 of 20

NASD | This section is part of a frameset. This page contains the main content of the fram... | Page 2 of 3

remaining arbitrators in order of preference. The Direct shall consolidate the parties' rankings, and shall appoint arbitrators based on the order of rankings on the consolidated list, subject to the arbitrators' availability and disqualification.

(B)(i) In cases in which the panel consists of a majority of public arbitrators, the Director will generate and provide to the parties a list of nine arbitrators from NASD's roster of arbitrators. The Director shall send to the parties employment history for the past 10 years for each listed arbitrator and other background information. At least a majority of the arbitrators listed shall be public arbitrators, and at least four of the arbitrators listed shall be lawyers with experience litigating cases involving injunctive relief.

(ii) Each party may exercise two strikes to the arbitrators on the list. Within three days of receiving the list, each party shall inform the Director which arbitrators, if any, it wishes to strike, and shall rank the remaining arbitrators in order of preference. The Director will combine the parties' rankings, and will appoint arbitrators based on the order of rankings on the combined list, subject to the arbitrators' availability and disqualification.

(C)(i) Each party must inform the Director of its preference of chairperson of the panel by the close of business on the next business day after receiving notice of the panel members.

(ii) If the parties do not agree on a chairperson within that time, the Director shall select the chairperson. In cases in which the panel consists of a majority of public arbitrators, the Director will select a public arbitrator as chairperson. Whenever possible, the Director will select as chairperson the lawyer with experience litigating cases involving injunctive relief whom the parties have ranked the highest.

(D) The Director may exercise discretionary authority and make any decision that is consistent with the purposes of this rule and the Code to facilitate the appointment of panels and the selection of chairperson.

(4) Applicable Legal Standard

The legal standard for granting or denying a request for permanent injunctive relief is that of the state where the events upon which the request is based occurred, or as specified in an enforceable choice of law agreement between the parties.

(5) Effect of Pending Temporary Injunctive Order

Upon a full and fair presentation of the evidence from all relevant parties on the request for permanent injunctive relief, the panel may prohibit the parties from seeking an extension of any court-issued temporary injunctive order remaining in effect, or, if appropriate, order the parties jointly to move to modify or dissolve any such order. In the event that a panel's order conflicts with a pending court order, the panel's order will become effective upon expiration of the pending court order.

(6) Fees, Costs and Expenses, and Arbitrator Honorarium

(A) The parties shall jointly bear reasonable travel-related costs and expenses incurred by arbitrators who are required to travel to a hearing location other than their primary hearing location(s) in order to participate in the hearing on the request for permanent injunctive relief. The panel may reallocate such costs and expenses among the parties in the award.

(B) Each party seeking a temporary injunctive order in court pursuant to this rule must pay a non-refundable surcharge of $2,500 at the time the party files its statement of claim and request for permanent injunctive relief. In the award, the panel may decide that one or more parties must reimburse a party for part or all of the surcharge. The surcharge is in addition to all other non-refundable filing fees or costs that are required under the Code.

(C) Notwithstanding any other provision in the Code, the chairperson of the panel hearing a request for permanent injunctive relief pursuant to this rule shall receive an honorarium of $375 for each single session, and $700 for each double session, of the hearing. Each other member of the panel shall receive an honorarium of $300 for each single session, and $600 for each double session, of the hearing. The parties shall equally pay the difference between these amounts and the amounts panel members and the chairperson receive under the Code pursuant to Rule 13214. The panel may reallocate such amount among the parties in the award.

(c) Hearing on Damages or Other Relief

(1) Upon completion of the hearing on the request for permanent relief, the panel may, if necessary, set a date for any subsequent hearing on damages or other relief, which shall be held before the same panel and which shall include, but not be limited to, the same record.

(2) The parties shall jointly bear reasonable travel-related costs and expenses incurred by arbitrators who are required to travel to a hearing location other than their primary hearing location(s) in order to participate in any subsequent hearings on damages or other relief. The panel may reallocate such costs and expenses among the parties

in the award.

Adopted by SR-NASD-2004-011 eff. April 16, 2007.

Selected Notices to Member: 07-07

<< **Previous**                                                                                          **Next** >>

© 2007 NASD. All rights reserved.