Kevin Holl, State Bar No. 124830
GORDON-CREED, KELLEY, HOLL &
SUGERMAN
222 Kearny Street, Suite 650
San Francisco, CA 94133
Telephone: (415) 421-3100
Facsimile: (415) 421-3150

ORIGINAL
FILED

JUN 2 6 2007

Attorneys for Plaintiff Merrill Lynch, Pierce,
Fenner & Smith Incorporated

filing

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

MMC

| | |
|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> WILLIAM E. FREDRICKSON, an individual, <br><br> Defendant. | C 07 3336 <br><br> Date: To Be Determined <br> Time: To Be Determined <br> Courtroom: To Be Determined |

### AFFIDAVIT OF ABBY IVINS

I, Abby Ivins, state the following:

1.     I am the Administrative Manager for the Merrill Lynch, Pierce, Fenner &

Smith Incorporated ("Merrill Lynch") San Francisco California Complex. Defendant was

formerly employed in the Santa Rosa office of Merrill Lynch, which is part of the San Francisco

Complex. I submit this Affidavit based on personal knowledge and in support of Merrill

Lynch's request for a temporary restraining order and preliminary injunctive relief against

Defendants.

2.    No prior motion for similar relief has been filed in this matter.

3.    As the Administrative Manager of Merrill Lynch's San Francisco
Complex, my duties and areas of responsibility include compliance matters, supervision of
financial advisors, implementation of firm policy, and general responsibility and familiarity with
each financial advisor and the accounts he/she services.

4.    I am familiar with the facts and circumstances of William E. Fredrickson's
("Defendant's") employment with, and termination from, Merrill Lynch. I am familiar with the
Financial Consultant Employment Agreement and Restrictive Covenants signed by Defendant. I
am also familiar with Merrill Lynch's policies and procedures regarding Merrill Lynch
confidential client information.  I am also generally familiar with the customer statements,
performance histories, and other records and information relating to the accounts the Defendant
serviced while employed at Merrill Lynch, as well as the wage records, registration and licensing
forms, compliance records, and other records and documents related to Defendant's employment
with Merrill Lynch.

4.    In exchange for the commitments agreed to by Fredrickson in his
employment agreement, he received many benefits throughout his employment with Merrill
Lynch. Merrill Lynch provided Defendant with training and paid Defendant's annual
registration fees with the New York Stock Exchange, National Association of Securities Dealers,
American Stock Exchange, and the California State securities commission. Merrill Lynch also
compensated Defendant at all times throughout his employment and provided him with Merrill
Lynch employment-related benefits and opportunities.

5.    As a result of his employment at Merrill Lynch, which included extensive
sales opportunities, sales systems, sales support, and other services in addition to Merrill Lynch

2

name recognition and goodwill, Defendant serviced **hundreds of Merrill Lynch customers**, totaling over **$29 million** in assets under Merrill Lynch management. These accounts have generated approximately **$170,000** in commission revenues in the last twelve months alone.

6.      On Friday, June 1, 2007, Defendant resigned from Merrill Lynch without any prior notice and immediately commenced employment with Royal Alliance Associates, Inc., ("Royal Alliance"), a direct competitor of Merrill Lynch located nearby.

7.      Before Defendant resigned, he misappropriated confidential and proprietary Merrill Lynch trade secret information, including information that could not be readily obtained from public sources, and he has been improperly using this purloined information to aggressively solicit Merrill Lynch customers in violation of his Agreement and the Merrill Lynch policies to which he agreed as a condition of his employment.

8.      In addition, in February 2006, Fredrickson signed an agreement related to the use of his personal laptop for business purposes in order to have client contact information placed on his laptop. A copy of this agreement is attached as Exhibit "A." In this agreement, Fredrickson affirmed his responsibility for protecting any sensitive client and Merrill Lynch data that may be stored on his personal computer. He also understood and agreed that Merrill Lynch would request his computer if he separated from the firm. On June 4, 2007, through counsel, I requested that the computer be returned so that Merrill Lynch could remove any confidential information from the computer. To date, Fredrickson has failed to return the computer and I believe the client contact system installed on his computer is still there.

9.      Based on Defendants' conduct, I believe Defendant has taken highly confidential and proprietary pertaining to Merrill Lynch clients from Merrill Lynch and has disclosed such information to Royal Alliance for purposes of solicitation.

3

      10.    The disclosure of Merrill Lynch's non-public customer information to a competitor firm and the use of this information to solicit Merrill Lynch customers is very troubling to me because our offices have taken strict steps to maintain the confidentiality of Merrill Lynch's client lists and customer records and to ensure that these records and information are not disclosed outside of Merrill Lynch. As a Merrill Lynch Financial Advisor, Defendant was fully aware of and responsible for complying with Merrill Lynch's policy of confidentiality.

      11.    Moreover, on his last day of employment with Merrill Lynch at 4:27 p.m., Fredrickson sent out a mass email using Merrill Lynch's email system to **423** clients he learned of or serviced while employed with Merrill Lynch. A redacted version of this electronic mail is attached hereto as Exhibit "B." This conduct is contrary to both Defendant's employment agreement as well as Merrill Lynch's clear policies protecting confidential and private client information. In addition to Defendant's mass solicitation email, it is believed that Defendant has been placing telephone calls to the Merrill Lynch clients whom he formerly serviced and has been conducting personal meetings with the clients, during which he has been actively soliciting them to transfer their accounts to Royal Alliance. Numerous Merrill Lynch clients have confirmed receiving Defendant's solicitations since Defendant's surprise resignation. Based on past experiences and the email referenced above, I believe Defendant has solicited most, if not all, of the clients he formerly serviced in an attempt to induce those clients to transfer their accounts from Merrill Lynch to Royal Alliance and will continue to so contact Merrill Lynch clients using Merrill Lynch confidential and private information unless and until Defendant is enjoined by the court from doing so.

12.    Defendant's mass email, sent while he was still an employee of Merrill Lynch, was in violation of his <u>Financial Consultant Employment Agreement and Restrictive Covenants</u> in addition to Merrill Lynch's policies regarding the privacy and confidentiality of Merrill Lynch client information. Indeed, through Merrill Lynch clients "A" & "B"[1], I have confirmed they received the email from Defendant, in direct violation of his contractual and legal obligations to Merrill Lynch. These clients asserted a concern that this conduct constituted a "Security Breach," resulting in a violation of the privacy of their email address by including it on the same email sent to hundreds of Merrill Lynch clients.   A redacted version of "A" & "B"'s email to Merrill Lynch is attached hereto as Exhibit "C."

13.    Consistent with "A" & "B"'s statements, I have good reason to conclude that Defendant has, in violation of his contractual obligations to Merrill Lynch, retained and/or used confidential and proprietary Merrill Lynch client information, including, at a minimum, client names, email addresses, addresses, telephone numbers, and account information. I know this, for instance, because Defendant Fredrickson emailed himself and retained a copy of the aforementioned mass solicitation email, which includes hundreds of Merrill Lynch client email addresses.

14.    Defendant's pre-resignation and post-resignation conduct clearly shows that he has: (i) taken Merrill Lynch customer information and used it for his own personal benefit and (ii) solicited many of the customers he serviced to obtain their business for his new employer, Royal Alliance.

15.    Our office has taken strict steps to maintain the confidentiality of Merrill Lynch's client lists and customer records and to ensure that these records and information are not

---

[1] Clients are referred to by letter to protect their privacy.

5

disclosed outside of Merrill Lynch. Defendant was fully aware of and responsible for complying with Merrill Lynch's policy of confidentiality. First of all, Defendant's commitment not to misappropriate Merrill Lynch client information or confiscate Merrill Lynch records is contained in his agreements with Merrill Lynch.

16.    In addition, our office has implemented many other procedures to maintain the confidentiality of Merrill Lynch's proprietary client list and the confidential and sensitive information entrusted to Merrill Lynch by our clients. For example, our office policy is that a Financial Advisor is provided with access only to confidential information pertaining to the particular clients that he or she services. Each Financial Advisor uses a confidential password to gain access to the Merrill Lynch computer system to obtain information pertaining to the Merrill Lynch clients he or she services, and is permitted access to confidential customer information only on a "need to know" basis. In fact, when a Financial Advisor first signs on to the computer each day, a message immediately appears on the screen emphasizing that customer information is "ML [Merrill Lynch] confidential" and should be viewed only on a "need to know basis." In addition, Merrill Lynch management personally reviews all outgoing correspondence from all of the employees in the office to ensure that no confidential or proprietary information is disclosed outside of Merrill Lynch.

17.    The vast majority of Merrill Lynch customers that Defendant serviced were developed by Merrill Lynch at great expense and over a number of years. Merrill Lynch's customer list is the lifeblood of its business and the expenditures incurred by Merrill Lynch in obtaining its clients include the millions of dollars spent by Merrill Lynch every year on national and local advertising, the millions of dollars it costs Merrill Lynch to train its sales force, the millions of dollars a year Merrill Lynch spends for sales support staff, clearing services,

operations personnel, systems and support, management and compliance supervision, salaries, annual registration fees, computer services and equipment, phone, mail, research, literature, seminars, trade and other professional news publications, promotional events, the retention of experts in tax, asset management, employee and health benefits, insurance, real estate, estate planning, underwritings and numerous other sub-specialties, and the many other expenditures Merrill Lynch incurs in maintaining its goodwill in the securities industry and in compiling its customer list.

18.    The Merrill Lynch customers that Defendant serviced resulted directly from the vast expenditures Merrill Lynch incurs, including, without limitation, advertising, training, equipment, registration, staff, the retention of industry experts, research and development, and seminars. Defendant had access to Merrill Lynch's client lists solely by virtue of his employment with Merrill Lynch. These accounts represent an extremely small percentage of the many "potential" accounts existing in the vast public at large.

19.    Unless Defendant's conduct is immediately enjoined, other competitors of Merrill Lynch will be encouraged to engage in the same illegal activity, which will cause Merrill Lynch severe and permanent damage.

20.    Defendant's conduct has caused, and will continue to cause, irreparable harm to Merrill Lynch as follows:

a)    Disclosure of trade secrets, customer lists, and other confidential information that are solely the property of Merrill Lynch and its clients;

b)    Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

        c)      Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

        d)      Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

        21.      Unless Defendant's conduct is temporarily and preliminarily enjoined, Merrill Lynch will continue to suffer irreparable harm and incalculable damage.

I hereby state and depose under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated:   June 22nd, 2007

                               ABBY IVINS

Sworn to and Subscribed
Before me this 22nd day
of June 2007.

Notary Public



EXHIBIT A

FEB-16-2006  15:27    FL-PKIUHIE BERLIH HUH    787 575 6351    P.02/03

# Memorandum

To:     All Employees

From:   Cyrl Rath

Date:   February 15, 2006

Re:     Personal Computer Survey

We have been asked by Merrill Lynch's Compliance Department and the NYSE to account for employees who have personal computers or laptops that they use for business purposes. When you have a moment, would you please complete this survey and return it to Ann Marie. Please try to have it back ASAP. Please do complete this survey whether or not your have a personal PC or Laptop.

Thanks so much!

Name: Bill Fredrickson

_____ No, I do not have a PC or laptop.

_____ Yes, I have a:

☑ PC      Toshiba      (Same one)

☐ Laptop

☐ TOA portable.

If you answered "Yes" above, please complete the following.
I use my PC/laptop for: (check all that apply)

_____ 1. PIA

_____ 2. Interactive Financial Foundation

__✓__ 3. Client contact system

_____ 4. I am on a network system with (please list all users):   NO

_____ 5. Other: (please explain) _____ music ?

PS.  Laptop is under my desk
if you need Model #

## MERRILL LYNCH GUIDELINES FOR THE USE OF
## NON-PROPRIETARY BUSINESS RESOURCES

280  NO.615    COMFORT SUITES + 17037525251    22:38    05/17/2006

ML–PRIVATE WEALTH MGMT                          787 575 6351      P.03/03

You are requesting approval to use a personal computer in your Merrill Lynch office. Merrill Lynch may approve your use of this equipment based upon your strict adherence to the guidelines set forth below. Please read the guidelines carefully and acknowledge your understanding and acceptance by signing in the space indicated. Violation of these guidelines will result in the termination of your approval to use a personal computer and/or Internet connection outside of the WMW platform in the branch office, and may result in severe disciplinary action.

1. I will not access any unauthorized Internet sites or services, including but not limited to, e-mail, shopping and gaming services, and Internet sites or services that may offend, harass, insult or harm others.

2. I understand that Merrill Lynch reserves the right to conduct comprehensive searches and compliance reviews of the programs and files stored on the personal computer. I may not assert a right to privacy regarding any of the files contained on my personal computer used in the branch office.

3. I understand that Merrill Lynch asserts ownership and proprietary control over all firm business data stored on the personal computer.

4. I am responsible for protecting any sensitive client and Merrill Lynch data that may be stored on the personal computer.

5. I will not use the personal computer to send or receive business and personal e-mail messages and faxes. All such messages will be directed through WMW.

6. Upon separation from the firm, I understand that Merrill Lynch will subpoena my personal computer for purposes of removing all proprietary business data. My personal computer will remain under the control of the firm and will not be returned to me until all proprietary business data has been removed.

I will perform only the following functions using my personal computer in my Merrill Lynch office:

☑ PIA Portfolio Management System              ☑ Client Contact System
☑ Interactive Financial Foundation                 ___ Portfolio Asset Classifier
___ Other Use (please explain) _____

_Bru Fredrickson_
Employee Name

_William Frederick_
Employee Signature

_____        _Stephen Rente_            _2/24/06_
Manager/Director/                         Managing Director/Qualified            Date
Qualified Designee Name                 Designee Signature

2/16/06
Date



# EXHIBIT B

From:   Fredrickson, William (SANTA ROSA, CA) [william_e_fredrickson@ml.com]
Sent:   Friday, June 01, 2007 4:27 PM
To:     [redacted email addresses] barbara.hooke@ki.com;
        Barbara Larson (Business Family);
        whitemetaltiger@comcast.net; Fredrickson, William (SANTA ROSA, CA);
        [redacted email addresses]

To:



To:

Subject:          New Email Address

Just an update to say I am leaving Merrill Lynch and thank you for your support.

You may contact me through my home email address:

 <mailto:whitemetaltiger@comcast.net> whitemetaltiger@comcast.net

Hope to hear from you soon,

Sincerely,

Bill Fredrickson, CFP®

Senior Financial Advisor


— —

CAUTION: electronic mail sent through the Internet is not secure and could be intercepted
by a third party. For your protection, avoid sending identifying information such as
account, Social Security, or card numbers to us or others.  Further, do not send time-
sensitive, action-oriented messages such as transaction orders, fund transfer instructions
or check stop payments, as it is our policy not to accept such items electronically.
This message w/attachments (message) may be privileged, confidential or proprietary, and
if you are not an intended recipient, please notify the sender, do not use or share it and
delete it. Unless specifically indicated, this message is not an offer to sell or a
solicitation of any investment products or other financial product or service, an official
confirmation of any transaction, or an official statement of Merrill Lynch. Subject to
applicable law, Merrill Lynch may monitor, review and retain e-communications (EC)
traveling through its networks/systems. The laws of the country of each sender/recipient
may impact the handling of EC, and EC may be archived, supervised and produced in
countries other than the country in which you are located. This message cannot be
guaranteed to be secure or error-free. This message is subject to terms available at the
following link: http://www.ml.com/e-communications_terms/. By messaging with Merrill Lynch
you consent to the foregoing.

———



# EXHIBIT C

-----Original Message-----
From: ████████████████ [mailto:████████████████████]
Sent: Monday, June 04, 2007 9:47 AM
To: Reuter, J. stephe (SANTA ROSA, CA)
Subject: Security Breach

Attn: Steve Reuter

We have attached an email received from William Fredricksen to what
appears to be ALL OF HIS MERRILL LYNCH CLIENTS.

Is this common for Merrill Lynch to breach privacy of their clients
private email addresses?

Please advise us as to your disposition of this matter ASAP.

████████████████
████████████

----------------------------------------------------------------

1

CAUTION:  electronic mail sent through the Internet is not secure and could be intercepted by a third party. For your protection, avoid sending identifying information such as account, Social Security, or card numbers to us or others.  Further, do not send time-sensitive, action-oriented messages such as transaction orders, fund transfer instructions or check stop payments, as it is our policy not to accept such items electronically. This message w/attachments (message) may be privileged, confidential or proprietary, and if you are not an intended recipient, please notify the sender, do not use or share it and delete it. Unless specifically indicated, this message is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Merrill Lynch. Subject to applicable law, Merrill Lynch may monitor, review and retain e-communications (EC) traveling through its networks/systems. The laws of the country of each sender/recipient may impact the handling of EC, and EC may be archived, supervised and produced in countries other than the country in which you are located. This message cannot be guaranteed to be secure or error-free. This message is subject to terms available at the following link: http://www.ml.com/e-communications_terms/. By messaging with Merrill Lynch you consent to the foregoing.
-----------------------------------------------------------------